STATE of Minnesota, Respondent,

v.

Joseph Nathan GIVENS, Appellant.

No. C2–82–196.

Supreme Court of Minnesota.

April 15, 1983.

William R. Kennedy, Hennepin County Public Defender, James J. Krieger and Daniel E. O'Brien, Asst. Public Defenders, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., and Jerry S. Anderson, Sp. Asst. Atty. Gen., St. Paul, Thomas L. Johnson, County Atty., Vernon E. Bergstrom, Chief, Appellate Section, Rick Osborne, Michael Richardson and Beverly J. Wolfe, Asst. County Attys., Minneapolis, for respondent.

PETERSON, Justice.

A district court jury returned a verdict finding defendant Joseph Nathan Givens guilty of murder in the third degree, criminal sexual conduct in the second degree, kidnapping, and aggravated robbery, based upon events occurring in the early morning hours of October 16, 1980. What occurred on this early morning was the robbery, sexual assault, and murder of Maggie Stadsvold, and the robbery and kidnapping of Thomas Michaelson. Three young black males participated in these offenses; defendant is the last of the three co-defendants to be convicted for his part in these crimes. We affirm the conviction, but modify the sentence.

Defendant raises numerous pretrial, trial, and sentencing issues on this appeal. Although briefed, at oral argument defense counsel declined to address any of the particular pretrial or trial issues. Instead, he made a general assertion that a new trial be granted because a "totality of alleged errors" deprived defendant of a fair trial. We hold from our examination of the briefs and record that neither the pretrial nor trial issues, individually or collectively, warrant a reversal or new trial.

The sentencing issues, upon which defendant focused, do merit discussion. The issues are: (1) whether Minnesota's Sentencing Guidelines (guidelines) are on their face or as applied unconstitutional as lacking both substantive and procedural due process; (2) whether the departure from the guidelines' presumptive sentence for defendant's participation in the convicted offenses was justified; and (3) whether the durational departure of defendant's sentence violated his right to equal protection under the fourteenth amendment.

The essential facts of this case are reported in *State v. Blue,* 327 N.W.2d 7 (Minn. 1982). Henry Blue, one of defendant's companions in the crimes, was tried and convicted of first-degree murder; Roderick Jenkins, the other companion, thereafter pleaded guilty to first-degree murder. Briefly, defendant and Blue and Jenkins decided to rob Michaelson and Stadsvold, who were conversing in an automobile near Tenth Street and Holden Avenue in Minneapolis, a desolate area at that time of night. The trio robbed the pair, forced Michaelson out of the automobile and locked him in the trunk. Stadsvold was forced into the back seat of the automobile and sexually assaulted. She fled from the automobile; Blue chased her, caught her, and severely beat her on the head with a discarded board (24 to 36 inches long, 3 inches wide, 1 inch thick) resembling a fence picket. A blow to the base of her neck caused the fatal injury. The trio left the scene, but defendant returned a short while later to sexually assault Stadsvold again, although, implicit in the jury verdict, she was dead at the time.[1]

The sequence of sentencing events occurred as follows: the trial court initially outlined its intention to depart upward from the guidelines' presumptive sentence at defendant's sentencing. Concerned by the court's stated intention, defendant asked for a formal sentencing hearing, and it was granted. The parties presented substantial evidence at the sentencing hearing. The court thereafter imposed sentences for the third-degree murder and for the kidnapping convictions, in each case a departure from the presumptive sentences.

---

1. Defendant was charged with criminal sexual conduct in the first degree, a crime which involves the sexual penetration of a live person. Minn.Stat. § 609.342 (1982). This is opposed to bestiality, a crime which involves carnally knowing a dead person, Minn.Stat. § 609.294 (1982). The jury acquitted defendant of the first-degree criminal sexual conduct indictment, which also formed the basis for the first-degree murder indictment, Minn.Stat. § 609.-185(2) (1982), of which defendant was also acquitted.

For defendant's third-degree murder conviction the court imposed a sentence of 24 years' imprisonment. The presumptive sentence for this conviction for a defendant having no prior criminal history record (a guidelines' criminal history score of zero) is 97 months, so the sentence imposed represents approximately a treble departure from the presumptive sentence. The stated reasons for the trial court's departure were that the victims were particularly vulnerable, being in a desolate area in early morning hours, and that Stadsvold was treated with severe brutality following her attempted escape from defendant's sexual assault. For the kidnapping conviction, the court imposed a sentence of 4 years' imprisonment, a double departure from the presumptive sentence of 2 years. The departure was based on the fact that Michaelson was left in an unsafe area, and was subjected to an armed robbery. The court ordered the sentences to be served consecutively, for an aggregate sentence of 28 years.

1. Defendant challenges the constitutionality of the guidelines, contending that: (a) the standards for departure from the guidelines are so vague and overbroad as to be unconstitutional both on their face and as applied; and (b) the absence of procedural due process in the trial court's initiation of a departure from the guidelines renders the guidelines unconstitutional. We hold that the guidelines are not unconstitutional on either ground.

■ Vagueness and overbreadth are traditionally doctrines applied to criminal statutes which impose sanctions for certain activities. Overbreadth is more properly considered under first amendment standing doctrine—designed to protect expression. L. Tribe, *American Constitutional Law*, § 12–29 (1978). Defendant makes no attempt to articulate why this doctrine applies to his case. Void for vagueness theory—based as it is upon fifth amendment due process notions—more properly applies to the facts of this case. A law is void on its face if it is so vague that persons "of common intelligence must necessarily guess at its meaning and differ as to its applica-tion." *See, e.g., Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926); L. Tribe, *American Constitutional Law,* § 12–28 (1978).

Defendant does not contend that the criminal statutes leading to his conviction are void for vagueness; rather, the claim focuses on the standards for imposing the criminal sentences for the crimes committed. The guidelines offer a nonexclusive list of aggravating factors to be considered in a decision to make a sentencing departure. Minnesota Sentencing Guidelines and Commentary, II.D.2(b) (1983). Three points must be made before analyzing the constitutional merit of defendant's claim: (1) the guidelines not only list aggravating factors but also specify factors—such as race, sex, employment—which may not be used as a basis for a sentencing departure; *id.,* II.D.1; (2) the trial court applied only specified aggravating factors, and (3) this court is in the process of fleshing out the guidelines in an ongoing series of judicial decisions. Counsel for defendant and the state acknowledged at oral argument that the guidelines represent a salutory step forward in controlling sentencing discretion, with an ultimate objective of achieving greater uniformity in sentencing statewide, consistent with fitting punishment to the particular nature of the crime committed.

The authority for applying vagueness principles to sentencing decisions is *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980). The narrowness of its application is revealed by the statute analyzed in that case. In Georgia, a person convicted of murder could have been *sentenced to death* if it was found beyond a reasonable doubt—by a jury—that the offense "was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim." Ga.Code § 27–2534.1(b)(7) (1978). *Godfrey,* 446 U.S. at 422, 100 S.Ct. at 1762; *see also, Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (same statutory aggravating circumstance held *not* unconstitutional on its face). The court held that a

state must *apply* its law in a manner that avoids arbitrary and capricious infliction of the death penalty, *i.e.,* it must define crimes for which death may be imposed in a way that obviates standardless sentencing discretion. *Godfrey,* 446 U.S. at 428, 100 S.Ct. at 1764.

■ Of fundamental analytical importance, the holding rests on the eighth amendment as applied on states through the fourteenth amendment. *Godfrey,* 446 U.S. at 423, 100 S.Ct. at 1762. The death sentence imposed on a defendant through vague construction of a statute authorizing the death penalty is cruel and unusual punishment. A death penalty is the most awesome penalty that can be imposed upon a defendant, beyond correction or redemption. The present case is not a death penalty case, nor can it be said that defendant is receiving cruel and unusual punishment for the crimes he committed. The application of vagueness argument to more routine sentencing decisions—those not including the death sentence—is not contemplated by the *Gregg* and *Godfrey* decisions. Defendant's claim of vagueness of the guidelines, either on their face or as applied, is misplaced in this context.

■ Defendant's second, related claim of unconstitutionality is that the trial court's decision to depart from the presumptive sentence was violative of procedural due process. We conclude that there is little merit to this claim. First, the trial court is authorized by statute to depart from the sentencing guidelines. Minn.Stat. § 244.10 (1982). Second, following any felony conviction, defendant or the state may move for a sentencing hearing. *Id.* Defendant did move for and receive a sentencing hearing, at which he had full opportunity to present arguments and evidence why a presumptive sentence or downward sentence was appropriate in this case, and why an upward departure was inappropriate. We hold that the requirements of procedural due process were satisfied.

■ 2. The upward departure for the third-degree murder conviction, trebling the presumptive sentence of the guidelines, presents the most serious issue on appeal. We have in a series of cases established that upward departures greater than double the presumptive sentence require facts "so unusually compelling" that such a departure is justified. *State v. Evans,* 311 N.W.2d 481, 483 (Minn.1981); *State v. Blue,* 327 N.W.2d 7, 13 (Minn.1982). Severe aggravating circumstances are necessary for a treble departure.

■ We hold that the facts of this case justify a double departure from the guidelines—especially considering defendant's active role in the robbery and sexual assault that led to Stadsvold's death at the hands of Blue—but do not justify a treble departure. The stark fact is that treble departure probably represents an attempt to equalize the sentence of defendant with those received by companions Blue and Jenkins, who are both imprisoned for first-degree murder. The practical effect of the treble departure is to negate the jury's more favorable verdict for this defendant. Whether the jury was correct in finding this defendant less guilty than a different jury found with respect to a companion to the same crime does not justify a departure that would treat the juries' verdicts as if they were the same: a particular jury's verdict may not be so disregarded. Accordingly, the sentence is modified to double the presumptive sentence to 16 years.

■ We affirm the double departure for defendant's kidnapping conviction for the same reasons that we affirmed the double departure for Blue, based upon defendant's participation in the crime. *Blue,* 327 N.W.2d at 13.

■ 3. The final sentencing contention is that defendant's constitutional right to equal protection was violated by the durational departure from the presumptive sentences of the guidelines. The premise for the claim is statistical data demonstrating that blacks have received disparate sentences for the same offenses as white offenders. Preliminary Report on the Development and Impact of the Minnesota Sen-

tencing Guidelines (July, 1982). Disparity of sentencing based upon race has no place in our justice system. The guidelines specifically reject race as a sentencing factor in sentencing decisions. Whatever disparity exists, discrimination was *not* the fact in this case. The absence of bias by the jury is demonstrated by the verdict acquitting defendant of the first-degree murder and criminal sexual conduct charges. And more importantly with regard to sentencing bias, counsel for defendant explicitly acknowledged that the trial court was in no way motivated by racial bias.

The conviction is affirmed, and sentence modified, reducing the sentence for the third-degree murder from treble to double the presumptive sentence.