In re the Matter of the
WELFARE OF D.K.K.

No. C4–86–2198.

Court of Appeals of Minnesota.

Aug. 11, 1987.

Dale C. Nathan, Eagan, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Charles Salter, Asst. Co. Atty., Minneapolis, for respondent.

Heard, considered and decided by CRIPPEN, P.J., and LESLIE and LOMMEN,* JJ.

## MEMORANDUM OPINION

LESLIE, Judge.

On March 4, 1986 D.K.K. went to a department store with her grandmother and Robert Matos, a man D.K.K. described as a friend of her uncle. After about half an hour, D.K.K. and her grandmother left the department store. Security guards stopped the two in the parking lot, accused them of shoplifting and detained them until police arrived. Matos was arrested in a nearby store where police found several discarded stolen items in a trash receptacle.

The County filed a delinquency petition against D.K.K., alleging she aided, advised, counseled or conspired to steal property having a value over $250. At trial D.K.K. denied the allegations and claimed she had no knowledge of the shoplifting. The County presented testimony from two security agents who saw D.K.K. and Matos together near a clearance rack in the department store. The security agents testified that D.K.K. placed three items on the clearance rack, talked briefly with Matos and then walked away. The agents saw Matos take all the items D.K.K. had placed on the rack, roll them into a ball and put them inside his jacket. The agents claim Matos then nodded at D.K.K. who was

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

standing 15 feet from him. Matos quickly left the store.

The security agents chased Matos from the store but eventually lost sight of him. While police were searching for Matos, the agents caught up with and stopped D.K.K. and her grandmother, who were just leaving the department store. D.K.K. was wearing her jacket inside out; it was now light blue instead of navy and white. D.K.K. explained that her jacket was more comfortable inside out, due to the weather. The grandmother stated that the two had been given a ride to the department store by a female friend and were waiting for a ride from that person. D.K.K. and her grandmother both denied having had previous contact with any male that evening.

The trial court found the evidence established D.K.K. had committed the offense charged and adjudicated her delinquent. D.K.K.'s motion for a new trial was denied and this appeal followed. D.K.K. claims there was insufficient evidence to support the trial court's decision.

## DECISION

A trial court's findings are entitled to the same weight as a jury verdict. *Welfare of T.J.D.*, 351 N.W.2d 382, 384 (Minn.Ct.App.1984). In reviewing the sufficiency of evidence this court must view the evidence in a light most favorable to the decision and decide whether the court could conclude the person had committed the offense. *Welfare of L.B.*, 404 N.W.2d 341, 345 (Minn.Ct.App.1987). We cannot retry the facts and must assume the trial court believed the State's witnesses and disbelieved any contradictory evidence. *Id.* The two security agents testified they had a clear and unobstructed view of D.K.K. as she assisted Matos in the department store. They testified D.K.K. walked in with Matos, brought some items over to where he was standing in the store, stood near him while he rolled up and concealed the items in his jacket, looked around the store in an apparent effort to watch for sales clerks and watched D.K.K. leave the store.

Minn.Stat. § 609.05, subd. 1 (1984) provides that a person is criminally liable for a crime committed by another if he "intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime". Presence, companionship and conduct before and after the offense are circumstances from which a person's participation may be inferred. *Welfare of D.M.K.*, 343 N.W.2d 863, 867 (Minn.Ct.App.1984). Here the evidence establishes that D.K.K. was present when Matos took the items from the store. Indeed, the evidence shows she took some items over to Matos, watched him put the items in his jacket and stood as a "lookout" for him as he left the store. After leaving the store, D.K.K. denied having contact with a male and had turned her jacket inside out, changing its color. It was reasonable for the court to conclude D.K.K. had committed the offense of aiding and abetting theft in violation of Minn. Stat. §§ 609.05, subd. 1 and 609.52, subd. 2(1) (1984).

D.K.K. also claims the trial judge was not qualified to hear her case because of alleged misconduct of the judge almost ten years ago. There is no merit to this claim. D.K.K. cites no rule, statute or case law in support of her position, failed to file a notice to remove the judge and did not request the judge to recuse himself.

Affirmed.