STATE of Minnesota, Plaintiff,

v.

Timothy Earl
WILLENBRING, Defendant.

No. C4–89–2037.

Court of Appeals of Minnesota.

April 17, 1990.
Review Denied May 30, 1990.

Hubert H. Humphrey, III, Atty. Gen., Paul R. Kempainen, Asst. Atty. Gen., St. Paul, Roger S. Van Heel, Stearns County Atty., and Mary A. Yunker, Asst. County Atty., St. Cloud, for plaintiff.

Daniel Eller, 7th Dist. Public Defender and John F. Moosbrugger, Asst. Public Defender, St. Cloud, for defendant.

Considered and decided by FOLEY, P.J., and CRIPPEN, and MULALLY *, JJ.

## OPINION

FOLEY, Judge.

Defendant Timothy Earl Willenbring moved for dismissal of charges against him on the grounds that the statute under which he is charged, Minn.Stat. § 609.344, subd. 1(d) (1988), as further defined by Minn.Stat. § 609.341, subd. 6 (1988), is unconstitutionally vague and overbroad. The

* Acting as judge of the Court of Appeals by ap-

trial court denied the motion and certified to this court as important and doubtful the question of whether the statute is unconstitutionally vague.

## FACTS

In answering this certified question at the pretrial stage, we are not here trying the facts. Willenbring concedes the following facts for purposes of this motion.

Willenbring met M.B. for the first time on November 23, 1988 at the apartment of a mutual acquaintance. They had sexual intercourse. M.B. later exhibited signs of distress which led to the revelation of these events.

According to a licensed psychologist who has worked with M.B. for four years, M.B. has an I.Q. of 68 with an adoptive living composite level of a 13–year–old. The psychologist says M.B. is mentally handicapped and is classified as a vulnerable adult.

M.B. went to the apartment knowing she would meet Willenbring. Willenbring's and M.B.'s mutual acquaintance and his girlfriend were also there. M.B. said that, when she and Willenbring were alone in the living room, Willenbring "wanted to have sex with me on the couch and then he and then I took my clothes off and he took his clothes off and we did it on the couch." M.B. told Willenbring she did not want to have sex with him, but they had sex anyway.

About an hour later, Willenbring wanted to have sex again, and they did, on the living room floor. M.B. again said she did not want to have sex. M.B. said Willenbring did not threaten her or promise her anything.

Willenbring said he had had at least a six-pack of strong beer that evening. He also said he was having problems with his marriage, and he had asked the mutual acquaintance if he knew anybody who would "put out." The mutual acquaintance called M.B.

pointment pursuant to Minn. Const. art. 6, § 2.

Willenbring said he had never met M.B. before and she seemed to be a "little retarded." When asked if he knew M.B. was mentally handicapped, he replied, "To a degree. Yes." Willenbring said he did not ask M.B. if she would have sex with him, but if he could "make her happy." Willenbring admitted sexually penetrating M.B., although he denied doing it more than once. When Willenbring was asked if he had seen M.B. since that night, he answered he had looked her up in the phone book but did not call her because he felt "ashamed."

## ISSUE

Is Minn.Stat. § 609.344, subd. 1(d), as further defined by Minn.Stat. § 609.341, subd. 6, unconstitutionally vague in that it fails to provide adequate notice to persons of ordinary intelligence of what conduct is prohibited and that it fails to provide law enforcement officials with adequate guidance to discourage arbitrary and discriminatory enforcement?

2. Should this court review an overbreadth challenge on first amendment grounds under the facts of this case?

## ANALYSIS

The challenged statute reads:

A person who engages in sexual penetration with another person is guilty of criminal sexual conduct in the third degree if * * *:

\* \* \* \* \* \*

(d) the actor knows or has reason to know that the complainant is mentally impaired * * *;

Minn.Stat. § 609.344, subd. 1. "Mentally impaired" is defined as meaning that

a person, as a result of inadequately developed or impaired intelligence * * * lacks the judgment to give a reasoned consent to sexual contact or to sexual penetration.

Minn.Stat. § 609.341, subd. 6. "Consent" is defined as

a voluntary uncoerced manifestation of a present agreement to perform a particular sexual act with the actor.

Minn.Stat. § 609.341, subd. 4.

Willenbring concedes there are mentally disabled vulnerable adults who are in need of protection. Willenbring argues, however, that this statute does not provide a consistent frame of reference for determining what conduct is proscribed in a manner that does not encourage arbitrary enforcement. We disagree.

Every law enacted by the legislature carries a presumption of constitutional validity. Minn.Stat. § 645.17(3) (1988); *Head v. Special School District No. 1*, 288 Minn. 496, 506, 182 N.W.2d 887, 894 (1970), *cert. denied*, 404 U.S. 886, 92 S.Ct. 196, 30 L.Ed.2d 168 (1971). This presumption of constitutionality stands unless it is disproven beyond a reasonable doubt. *Hickman v. Group Health Plan, Inc.*, 396 N.W.2d 10, 13 (Minn.1986).

The Constitutions of Minnesota and the United States require criminal statutes to be sufficiently definite to meet due process requirements. *State v. Newstrom*, 371 N.W.2d 525, 528 (Minn.1985). What is required under this void for vagueness doctrine is that

a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.

*Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983), *quoted in Newstrom*, 371 N.W.2d at 528.

■ The fact the challenged statute may be phrased in somewhat general language does not make it unconstitutionally vague.

The root of the vagueness doctrine is a rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited.

*Colten v. Kentucky,* 407 U.S. 104, 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584 (1972), *quoted in State v. Hipp,* 298 Minn. 81, 89, 213 N.W.2d 610, 615 (1973).

 We also note this statute has a scienter requirement. The requirement of the statute that the actor "know or have reason to know" of the mental impairment acts to mitigate whatever vagueness there might be. *State v. Christensen,* 439 N.W.2d 389, 392 (Minn.Ct.App.1989), *pet. for rev. denied* (Minn. June 9, 1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 329, 107 L.Ed.2d 319 (1989) (citing *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 499, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982)).

Willenbring has urged this court to adopt a saving construction to the effect a "mentally impaired" person is one who, as a result of inadequately developed or impaired intelligence, is incapable of appraising the nature of her conduct or incapable of giving or withholding consent. Even if we were to adopt such a construction, it is doubtful it would change the result as to Willenbring. In any event, we see little difference between Willenbring's offered construction and the way the statute is written.

A vagueness challenge not involving a first amendment freedom must be "examined in light of the facts at hand." *State v. Becker,* 351 N.W.2d 923, 925 (Minn.1984) (citing *United States v. Powell,* 423 U.S. 87, 92, 96 S.Ct. 316, 320, 46 L.Ed.2d 228 (1975)). "Unless the statute proscribes no comprehensible course of conduct at all, it will be upheld." *Id.*

 We decline to review an overbreadth challenge to the statute on first amendment grounds. We are guided by *State v. Gray,* 413 N.W.2d 107 (Minn.1987). There, the supreme court declined to reach whether freedom of intimate association is protected under the first amendment because the facts of that case did not implicate privacy interests. *Id.* at 113–14. Similarly, the facts of this case do not implicate privacy interests in freedom of intimate association. Willenbring had never met M.B. before and did not attempt to continue their association. Willenbring simply wanted a compliant sexual partner.

 Furthermore, the alleged facts of this case are a paradigm of the conduct the statute seeks to prohibit. Willenbring sought out M.B. because he wanted someone who would comply with his desire she "put out." M.B. told Willenbring she did not want to have sex even though she acquiesced. He admitted he knew M.B. was a "little retarded" and mentally handicapped "to a degree." He therefore knew she suffered from a mental disability. These facts were sufficient to put Willenbring on notice about M.B.'s capacity.

## DECISION
Certified question answered in the negative.