In the Matter of the **WELFARE OF K.C.**

No. C8–93–1543.

Court of Appeals of Minnesota.

March 15, 1994.

Review Denied May 17, 1994.

William Kennedy, Hennepin County Public Defender, Peter W. Gorman, Asst. Public Defender, Minneapolis, for appellant K.C.

Michael O. Freeman, Hennepin County Atty., Linda M. Freyer, Asst. County Atty., Minneapolis, for respondent Hennepin County.

Considered and decided by LANSING, P.J., and RANDALL and AMUNDSON, JJ.

## OPINION

RANDALL, Judge.

This appeal is from a juvenile reference order, entered under the prima facie reference statute, Minn.Stat. § 260.125, subd. 3 (1992). Appellant K.C. contends the statute was not properly applied to him and that it is unconstitutional. We affirm.

## FACTS

Appellant K.C. was charged by delinquency petition with one count of first degree murder and two counts of second degree murder. The state moved for a reference for adult prosecution, citing the prima facie reference statute, Minn.Stat. § 260.125, subd. 3(1), (2) (1992). After an adult-reference study was completed, the state submitted a probable cause showing consisting of a probable cause statement and part of the police investigation. K.C. did not object to this procedure, and the juvenile court found that probable cause existed to support the charges.

The victim was shot by a group of young Asian males who appeared at his home in the guise of delivering pizza. The victim's sister told police she was upstairs when she heard a commotion, and went to the top of the stairs where she saw two Asian men standing near the front door beside her fallen brother. She ran to an upstairs window and saw the men running from the house and three men getting into a car. The car was stopped nearby and three men, including appellant K.C., were taken from the car and arrested.

In his statement to police, K.C. admitted he was with the two men who did the shooting. K.C. told police that the victim had been harassing him lately with threats, crank phone calls, and graffiti, and that he and the other two men had driven to the victim's house to scare him. K.C. admitted handing one of the men a shotgun which was in the car, and giving the other accomplice a handgun. He told police he went up to the porch with the others but retreated when the shooting started. The victim's sister, who knew K.C., did not identify him as one of the two assailants. The victim was shot seven times in the head and shoulder and died instantly.

The victim's sister told police that the victim was a member of an Asian gang, and that he had received threats recently from other Asian gangs. The two adult suspects were charged with first and second degree murder.

At the adult reference hearing, the state proceeded based on the reports in the file and argued that a prima facie case for adult reference had been shown. K.C. contended the state's evidence did not satisfy the statute, and challenged the statute on constitutional grounds. The court granted the motion for adult reference, which was stayed pending this appeal.

## ISSUES

1. Was the prima facie reference statute properly applied to appellant?

2. Does the prima facie reference statute violate due process?

3. Does the statute violate the equal protection guarantee of the state constitution?

## ANALYSIS

### I.

K.C. argues that the prima facie reference statute was improperly applied to him because he was merely a passive accomplice in the victim's death. He also argues that the crime was not particularly cruel and that it did not involve a high degree of sophistication or planning.

The prima facie reference statute, as applied to K.C., provides:

A prima facie case that the public safety is not served or that the child is not suitable for treatment shall have been established if the child was at least 16 years of age at the time of the alleged offense and:

(1) is alleged by delinquency petition to have committed an aggravated felony against the person and (a) in committing the offense, the child acted with particular cruelty or disregard for the life or safety of another; or (b) the offense involved a high degree of sophistication or planning by the juvenile; or (c) the juvenile, at the time of

the offense, used, whether by brandishing, displaying, threatening with, or otherwise employing, a firearm; or

(2) is alleged by delinquency petition to have committed murder in the first degree; * * *.

Minn.Stat. § 260.125, subd. 3(1), (2) (1992).

■ K.C. argues that the term "committed" connotes a higher degree of participation than that of a "passive accomplice." The evidence, however, does not establish that K.C. was a "passive accomplice." K.C. apparently suggested the visit to the victim's house, which was intended as retaliation for recent acts against K.C. He was not merely accompanying the two adults, particularly as he admitted handing the two guns to them. The assertion that there was no plan to shoot the victim is based only on the statement of K.C. Even if that were so, a violent confrontation with the victim was a foreseeable consequence of the armed appearance at his door. K.C. was more than a "passive accomplice" in the planning.

The statutory requirement that a juvenile must be alleged "to have committed" a certain type of felony does not imply a higher standard of criminal liability than that established in the Minnesota criminal code. The statute relies on the seriousness of the felony, not the juvenile's degree of participation, to target those offenses particularly meriting reference. Just as an adult defendant may be charged as an accomplice under Minn. Stat. § 609.05 (1992), a juvenile may be referred for adult prosecution based on that degree of participation. The court is, of course, free to consider the juvenile's degree of participation in determining whether the county's burden of proof has been met under the prima facie reference statute. It was so considered here.

■ We note that juveniles in the past have been found delinquent, and have been referred for adult prosecution, based on accomplice liability. *See In re Welfare of T.L.C.,* 435 N.W.2d 581, 583 (Minn.App.1989) (rejecting argument that misconduct of juvenile's accomplices had to be attributed to him in order to satisfy prima facie reference statute); *In re Welfare of D.K.K.,* 410 N.W.2d

76, 77 (Minn.App.1987) (juvenile properly adjudicated delinquent based on evidence she aided and abetted theft).

■ K.C. argues that the shooting of the victim was not particularly cruel or committed with a high degree of planning. We disagree. The victim was shot at point-blank range after being tricked into answering the door. The crime was committed with some degree of planning. Moreover, the county must show only one of the prima facie grounds for reference. Minn.Stat. § 260.125, subd. 3(1), (2). It need not show that the shooting was particularly cruel *and* highly sophisticated *as well as* being a first degree murder. *Id.*

■ In summary, the record is clear that K.C. was more than a passive participant who found himself in the wrong place at the wrong time. By his own admission, K.C. was heavily involved at every stage of a planned second degree assault. He only denies intending the actual shooting that elevated the assault to a homicide. In reviewing adult reference orders, this court will not disturb the juvenile court's decision unless its findings are clearly erroneous so as to constitute an abuse of discretion. *In re Welfare of E.Y.W.,* 496 N.W.2d 847, 850 (Minn.App. 1993), *pet. for rev. denied* (Minn. Apr. 20, 1993). There was no abuse of discretion in finding the prima facie reference statute was satisfied.

## II.

■ K.C. argues that the prima facie reference statute violates due process because of its vagueness and because it shifts the burden of proof to the juvenile. His vagueness challenge focuses on the phrase "with particular cruelty or disregard for the life or safety of another." Minn.Stat. § 260.125, subd. 3(1)(a) (1992).

■ A law is presumed to be constitutional and the party challenging it must show beyond a reasonable doubt that it is unconstitutional. *State v. Willenbring,* 454 N.W.2d 268, 270 (Minn.App.1990), *pet. for rev. denied* (Minn. May 30, 1990). A statute is not necessarily void just because it is phrased in general language. *Id.*

■ A penal statute must define an offense with sufficient definiteness so that ordinary people can understand what is prohibited and so that arbitrary and discriminatory enforcement is not encouraged. *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). As the state notes, there is a question whether the prima facie reference statute is a penal statute. Although the prima facie case, if unrebutted, initiates an adult criminal prosecution, it does not define a criminal offense or impose a punishment for one. Because we conclude the statute meets the *Kolender* standard, we need not decide the threshold issue.

The term "particular cruelty," although admittedly subjective, is used as a standard for departure in the sentencing guidelines. Minn. Sent. Guidelines II.D.2.b(2). The supreme court has rejected a void-for-vagueness challenge directed generally at the standards for departure. *State v. Givens,* 332 N.W.2d 187, 189–90 (Minn.1983).

The more important element of the vagueness analysis is whether the language promotes arbitrary and discriminatory enforcement. *State v. Davidson,* 481 N.W.2d 51, 56 (Minn.1992). Professor Feld cogently asserts that the "particular cruelty" standard is "an inherently vague grant of discretion," comparing its language to that of death penalty statutes struck down by the United States Supreme Court. Barry C. Feld, *Juvenile Court Legislative Reform and the Serious Young Offender: Dismantling the "Rehabilitative Ideal,"* 65 Minn.L.Rev. 167, 220 (1981). The argument has merit, but the supreme court in *Givens* declined to apply the reasoning from the same death penalty cases cited by Professor Feld, holding the vagueness argument does not apply to "more routine sentencing decisions." *Givens,* 332 N.W.2d at 190.

Insofar as the prima facie reference statute involves a dispositional decision akin to criminal sentencing, we believe the *Givens* holding applies here. However, even assuming the vagueness argument is valid, the prima facie reference statute is not unconstitutionally vague.

The *Givens* court noted that at the time it was "in the process of fleshing out the [sentencing] guidelines in an ongoing series of judicial decisions." *Id.* at 189. Since then, numerous decisions have been issued applying the term "particular cruelty" to different felonies. *See, e.g., State v. Bock,* 490 N.W.2d 116, 121 (Minn.App.1992), *pet. for rev. denied* (Minn. Aug. 27, 1992). This case law is available to courts in applying the prima facie reference statute. Moreover, the state must still show the offense committed was within the definition of an "aggravated felony against the person." Minn.Stat. § 260.125, subd. 3(1). All aggravated felonies are not automatically "cruel." This limitation, as well as the application of "particular cruelty" in sentencing cases, hopefully reduces the degree to which the prima facie reference statute may be arbitrarily and discriminatorily enforced.

K.C. cites an Arizona case in support of his due process argument that it is fundamentally unfair to refer a juvenile who is only a "passive accomplice" for adult prosecution. *In re Appeal in Coconino County Juvenile Action,* 150 Ariz. 435, 724 P.2d 54 (Ct.App. 1986). This case, however, discusses the evidentiary support for the reference decision and the amount of time available for rehabilitation, without discussing any due process ramifications. *See id.* at 441, 724 P.2d at 60. Also, as the county notes, the decision was vacated. *In re Appeal in Coconino County Juvenile Action,* 154 Ariz. 240, 741 P.2d 1218 (1987). This decision was not "on other grounds," as K.C. contends, since there were no other issues involved in the case.

K.C. also claims that the prima facie reference statute unconstitutionally shifts the burden of proof to the juvenile. The statute, however, merely shifts the burden of production. *See, e.g., In re Welfare of D.F.B.,* 433 N.W.2d 79, 81 (Minn.1988) (if juvenile produces "significant" or "substantial" rebuttal evidence, burden of proof is on the state). The supreme court has implied that a single witness produced by the juvenile may satisfy this burden of production. *Id.*

■ K.C. does not argue that it is unconstitutional to place on the juvenile a burden of *production* in a reference hearing. *Cf. In re Winship,* 397 U.S. 358, 368, 90 S.Ct. 1068,

1075, 25 L.Ed.2d 368 (1970) (in a juvenile adjudication, state bears the burden of proof beyond a reasonable doubt). He contends that the burden of persuasion is "in effect" shifted to the juvenile, or at least that the state's burden is diluted. We understand his argument, but we disagree. The overall burden of proof remains on the state. K.C. cites no case law holding it unconstitutional to impose a burden of production on a juvenile in a reference hearing.

## III.

■ K.C. argues that the prima facie reference statute violates equal protection by creating an age-based distinction not rationally related to the objectives of the juvenile justice system.

The supreme court has held that under the state constitution equal protection requires "a reasonable connection between the actual, and not just the theoretical, effect of the challenged classification and the statutory goals." *State v. Russell*, 477 N.W.2d 886, 889 (Minn.1991). The courts will not hypothesize a rational basis to justify the classification, as they are permitted to do under the federal constitutional standard. *Id.*

Juvenile court jurisdiction, by definition, "has" to be based on age. *See* Minn.Stat. §§ 260.015, subd. 2, 260.111, subd. 1 (1992). A primary factor in any reference decision is whether the juvenile can be successfully treated within the juvenile system, where jurisdiction terminates at age 19. *See, e.g., In re Welfare of J.L.B.*, 435 N.W.2d 595, 600 (Minn.App.1989), *pet. for rev. denied* (Minn. Mar. 17, 1989). We understand that time is of the essence with respect to treatment options for older juveniles. *See In re Welfare of C.T.T.*, 464 N.W.2d 751, 752–53 (Minn. App.1991), *pet. for rev. denied* (Minn. Mar. 15, 1991).

There is a rational connection between the age of a juvenile offender and the ability of the juvenile system to treat the offender before it loses jurisdiction at age 19. This rational connection follows simply from the fact that treatment programs take time. There is nothing theoretical or hypothetical about this relationship. We conclude that the age-based classification in the prima facie reference statute has a rational basis, and does not violate equal protection.

## DECISION

The juvenile court did not abuse its discretion in applying the prima facie reference statute to appellant. The prima facie reference statute is not void for vagueness, or fundamentally unfair, nor does it impermissibly shift the burden of proof or violate equal protection.

**Affirmed.**