## In the Matter of the WELFARE OF L.M.

### No. A06–0044.

Court of Appeals of Minnesota.

Aug. 15, 2006.

County Attorney, Kathleen A. Kusz, Assistant County Attorney, Worthington, MN, for appellant State of Minnesota.

Mark D. Nyvold, Special Assistant State Public Defender, St. Paul, MN, for L.M.

Considered and decided by STONEBURNER, Presiding Judge; TOUSSAINT, Chief Judge; and DIETZEN, Judge.

## OPINION

DIETZEN, Judge.

Appellant State of Minnesota challenges the district court's denial of its motion to designate L.M. as an adult for the charges of aiding and abetting aggravated robbery, conspiracy to commit aggravated robbery, and felony theft, arguing that the court abused its discretion by shifting to the state the burden of rebutting the presumption of certification. We reverse and remand.

## FACTS

Respondent L.M. is a Guatemalan native who moved to Sioux Falls, South Dakota, in March 2005 to live with his aunt. L.M. speaks no English and has never attended school. Instead of attending school, he worked in the fields to earn money. L.M. can read Spanish but cannot write. Because of his age and the lack of proper documentation, L.M. was unable to obtain employment after arriving in the United States.

In October 2005, L.M. drove to a video store in Worthington, Minnesota, with Jeni Garcia and Jairo Sandoval–Lopez. Garcia entered the store to buy a calling card, while L.M. and Sandoval–Lopez waited in the car. When Garcia returned, Sandoval–Lopez asked her who was running the store. Garcia told him that it was a "girl."

Mike Hatch, Attorney General, St. Paul, MN; and Gordon L. Moore, III, Nobles

When L.M. and Sandoval–Lopez entered the store, L.M. got two bottles of juice and went to the register. When the cashier opened the register, Sandoval–Lopez went behind the counter with a look-alike gun and began taking money from the register while L.M. acted as a lookout. After L.M. and Sandoval–Lopez left the store, the cashier fell to her knees. When the police arrived, they found her crying and shaking. The robbery was captured on the store's video-recording system. The police then stopped the car based on the description witnesses had given them. In the car, officers found a pellet gun under an infant seat's cover and more than $1,700 in cash.

L.M. initially denied knowing anything about the robbery but later admitted being there. Sandoval–Lopez told police that he and L.M. had planned the robbery for two or three days and identified duct tape and plastic ties that the police had found in their possession as items that they intended to use during the robbery. Sandoval–Lopez indicated that although Garcia may have been suspicious, she was not involved in the robbery.

The state charged 17–year–old L.M. with aggravated robbery and theft and moved to certify him for adult prosecution. The juvenile-certification study recommended certification based on the seriousness of the offense, L.M.'s culpability, the lack of programming in the juvenile system, and the lack of dispositional options. But the district court denied the state's certification motion reasoning that although the offense was serious and the child was culpable, the remaining statutory factors, including the lack of a prior delinquency record and programming history, weighed against certification. The court also noted that the record contained no evidence that L.M. was unamenable to treatment or that adequate programming was not available in the juvenile system. This appeal follows.

## ISSUES

I. Did the district court abuse its discretion by shifting the burden of proof of certification to the state?

II. Did the district court abuse its discretion by failing to properly weigh the seriousness of the offense and by implicitly concluding that L.M. rebutted the presumption of certification with clear and convincing evidence that retaining the proceeding in the juvenile system served public safety?

## ANALYSIS

### I.

■ The state first argues that the district court abused its discretion by shifting the burden of persuasion to the state despite the presumption of certification. This court will reverse a certification decision only if it finds that the district court abused its discretion. *St. Louis County v. S.D.S.*, 610 N.W.2d 644, 647 (Minn.App. 2000).

■ Minn.Stat. § 260B.125, subd. 3(1)-(2) (2004), provides that certification is presumed when a defendant is 16 or 17 years old at the time of the offense and the delinquency petition alleges an offense that would result in presumptive commitment under the sentencing guidelines. The state bears the burden of showing that the juvenile is more than 16 years old and that the offense alleged in the petition carries an adult sentence. *See In re Welfare of K.A.P.*, 550 N.W.2d 9, 12 (Minn.App.1996) (stating that "[i]n presumptive certification case, the state can rest its argument on proof of the juvenile's age at the time of the offense and on the seriousness of the offense"), *review denied* (Minn. Aug. 20, 1996). When the state has established a

prima facie case for presumptive certification, the burden shifts to the child to rebut the presumption of certification by "demonstrating by clear and convincing evidence that retaining the proceedings in the juvenile court serves public safety." Minn. Stat. § 260B.125, subd. 3.[1]

In determining whether retaining the proceedings in juvenile court would serve public safety, the district court must consider six factors. Minn.Stat. § 260B.125, subd. 4 (2004). In considering these factors, the court must give greater weight to the seriousness of the alleged offense and the child's prior record of delinquency than to other factors. *Id.* For certification purposes, a juvenile is presumed to have committed the alleged offense. *In re Welfare of U.S.*, 612 N.W.2d 192, 195 (Minn.App. 2000). If the child fails to provide sufficient evidence regarding each of the statutory factors, the matter must be certified. Minn.Stat. § 260B.125, subd. 3(2) (providing that "[i]f the court finds that the child has not rebutted the presumption by clear and convincing evidence, the court shall certify the proceeding").

Here, the district court's written order and supporting memorandum reflect that the court shifted to the state the burden of showing that L.M. was unamenable to treatment and that no adequate programming was available in the juvenile system. For example, the district court found that no evidence had been presented that L.M. was unamenable to programming within the juvenile system. In its memorandum, the court also noted again that "there is no evidence that the [c]hild is not amenable to handling in the juvenile system." But in presumptive-certification cases the state does not have the burden of showing that the child is unamenable to treatment; instead, the burden is on the child to show

clearly and convincingly that he or she is amenable to treatment and that adequate programming is available. *Id.*, subd. 3.

The court similarly shifted the burden of proof to the state by determining that "the State ha[d] not shown by a preponderance of the evidence that [adequate] programming d[id] not exist." The state did not have the burden of showing that adequate programming did not exist in the juvenile system, however; the burden was on the child to show that such programming existed.

Finally, in its memorandum, the court indicated that "when a[c]hild commits an offense while under the age of 18 that [c]hild is entitled to be deemed a juvenile." As a matter of law, however, a child who commits an offense under the age of 18 is not always entitled to be deemed a juvenile. On the contrary, the governing statute expressly provides that a child who is 16 years or older and commits an offense punishable by incarceration is presumed to be suitable for prosecution purposes as an adult, and the statute places on the child the burden of showing clearly and convincingly that he or she should be deemed a juvenile. *See* Minn.Stat. § 260B.125, subds. 3, 4. Thus, the district court abused its discretion by shifting the burden of proof to the state.

## II.

■ The state next argues that the district court abused its discretion in determining that retaining jurisdiction in the juvenile court would serve public safety. Specifically, the state argues that the district court failed to properly weigh the seriousness of the offense. The state also argues that L.M. failed to rebut the presumption of certification with clear and

---

1. Because certification proceedings are governed by Minn.Stat. § 260B.125 and are not civil actions or proceedings, Minn. R. Evid. 301 does not apply. *See* Minn. R. Evid. 301.

convincing evidence that retaining the case in the juvenile system would serve public safety.

### Seriousness of the Offense

In evaluating whether retaining jurisdiction in the juvenile court would serve public safety, the district court must place more weight on the seriousness of the offense and the child's prior record of delinquency than on the other four factors. Minn.Stat. § 260B.125, subd. 4. The failure to place the proper weight on the seriousness of the offense is a basis for reversal. *St. Louis County v. S.D.S.,* 610 N.W.2d 644, 648–49 (Minn.App.2000) (reversing certification decision on ground that district court "understated and failed to weigh properly the seriousness of [the child's] alleged offenses" and the extensiveness of his record of gang-related misdemeanors). At the same time, however, evidence of the alleged offense alone is insufficient to justify certification. *In re Welfare of J.L.B.,* 435 N.W.2d 595, 599 (Minn.App.1989) (stating that in addition to any inference that may be drawn from the commission of the offense itself, the record must contain evidence of non-offense-related factors bearing on public safety), *review denied* (Minn. Mar. 17, 1989). The state makes seven arguments in support of its position that the district court did not place the proper weight on the seriousness of the offense.

First, the state argues that the district court failed to acknowledge that the use of a firearm enhanced the seriousness of the offense. *See* Minn.Stat. § 260B.125, subd. 4(1) (listing the use of a firearm as a factor to be considered in evaluating the seriousness of the offense). But the district court noted that, if proved, "the offense would constitute a serious offense in that it is a robbery of a business, during business hours, at a time when people were present,

*with a firearm being used in the robbery."* (Emphasis added.) The state's claim lacks merit.

Second, the state argues that in evaluating the seriousness of the offense the district court "appears to [have] discount[ed] the importance of the presence of the gun based on [L.M.'s] lack of direct contact with it during the robbery." The district court did not consider the lack of direct contact with the gun in evaluating the seriousness of the offense; but the district court's findings clearly show that it considered the lack of direct contact with the gun in assessing the degree of L.M.'s culpability. The certification statute expressly requires the court to consider "the level of the child's participation in planning and carrying out the offense" in determining culpability. Minn.Stat. § 260B.125, subd. 4(2); *see also In re Welfare of K.C.,* 513 N.W.2d 18, 22 (Minn.App.1994), (stating that "[t]he court is ... free to consider the juvenile's degree of participation in determining whether the county's burden of proof has been met under the prima facie reference statute"), *review denied* (Minn. May 17, 1994). Clearly, L.M.'s lack of direct contact with the gun reflected on the degree of his participation in carrying out the offense. The district court thus properly considered that factor in assessing L.M.'s culpability.

Third, the state argues that the district court abused its discretion by not taking into account the presence of other aggravating factors, including the impact of the crime on the victim. But the record reflects that the district court considered the impact of the offense on the victim in determining the seriousness of the offense. The court noted in its memorandum that the impact on the victim was the same as if a real firearm had been used, and it concluded that "for purposes of the charges *and the impact on the victim* [,] there is

no question that this offense is serious." (Emphasis added.) Thus, although the state may disagree with the weight the court gave to the impact of the offense on the victim, it is clear that the district court did consider that factor in determining whether the offense was serious.

Fourth, the state argues that the district court did not expressly consider that L.M. committed the crime "as part of a group of three or more persons who all actively participated in the crime[ ]" an aggravating factor under the sentencing guidelines. *See* Minn. Sent. Guidelines, II. D.2.b(10). But on this record, the court may well have concluded that Garcia did not "actively participate in the crime" and that her presence was not, therefore, an aggravating factor. The record reflects that Sandoval–Lopez told police that although Garcia was suspicious, she was not involved in the robbery. Thus, the district court did not abuse its discretion.

Fifth, the state argues that the district court abused its discretion by holding that "[L.M.'s] lack of [a] prior record was a factor that completely counterbalanced and canceled out the seriousness of the offense." But the district court simply stated that the lack of a prior record of delinquency or programming was "compelling" and, after noting that it was required to give more weight to the seriousness of the offense *and* the child's prior record of delinquency, concluded that the seriousness of the offense supported certification while the lack of a prior record of delinquency did not. The court's statement that the lack of a prior record and available programming was "compelling" cannot reasonably be construed to mean that those factors "canceled out" the seriousness of the offense. Thus, the record does not support the state's claim that the district court discounted the seriousness of

the offense in determining whether certification was appropriate.

Sixth, the state argues that the court's determination that the lack of a prior record of delinquency and programming was "compelling" suggests that the court gave undue weight to the lack of a prior record of delinquency and insufficient weight to the seriousness of the offense. Relying on *S.D.S.*, the state argues that the balance must be in favor of the seriousness of the offense. *See* 610 N.W.2d at 648–49 (balancing record of delinquency with seriousness of the offenses). But *S.D.S.* does not stand for the proposition that the seriousness of the offense necessarily trumps the lack of a prior record of delinquency; it merely holds that greater weight must be given to the seriousness of the alleged crimes *and* the extensiveness of a child's prior gang-related record than to other factors. *See id.* (reversing denial of certification motion on ground that district court "understated and failed to weigh properly facts that demonstrated the seriousness of respondent's alleged offenses . . . [and the child's] prior delinquency record"). On this record, we cannot say that the district court gave undue weight to the lack of a prior record of delinquency and insufficient weight to the seriousness of the offense.

Finally, the state argues that, in assessing culpability, the district court abused its discretion by considering L.M.'s lack of contact with the gun while ignoring evidence that L.M. actively participated in the planning and execution of the robbery. But the record contains no evidence that the court viewed L.M.'s lack of contact with the gun as precluding certification. Instead, the court properly considered L.M.'s lack of contact with the gun in assessing the degree of L.M.'s participation in the robbery. *See* Minn.Stat. § 260B.125, subd. 4(2). And the court's

failure to explicitly acknowledge L.M.'s participation in the planning of the offense does not mean that the court did not take that factor into account in concluding that L.M. was culpable.

The district court placed the proper weight on the seriousness of the offense and did not abuse its discretion either by considering L.M.'s lack of contact with the gun in assessing the level of his participation in the offense or by concluding that the lack of a record of delinquency and a history of programming was compelling and weighed against certification.

### Sufficiency of Rebuttal Evidence

■ The state next argues that L.M. failed to rebut the presumption of certification with clear and convincing evidence that retaining the case in the juvenile system would serve public safety. We agree.

In support of its position that certification was unwarranted, L.M. introduced the surveillance videotape, the Juvenile Certification Study, and the probation officer's testimony. The certification study recommended certification based on the seriousness of the offense, the degree of L.M.'s participation in the offense, the adequacy of punishment available in the juvenile system, the lack of adequate programming, and the lack of disposition options. The study indicated, inter alia, that given the seriousness of the offense, the fact that the offense involved the use of a firearm, and the fact that L.M. spoke no English and was uneducated, there were no programs within the juvenile system that could accommodate L.M.'s needs. Each of the five programs the probation officer contacted rejected L.M. for admission. Finally, the study indicated that because of the lack of programming and the lack of a delinquency record, neither EJJ nor commitment to the commissioner of corrections was an available disposition.

L.M. established through the probation officer's testimony that although she knew of no programs that could meet his needs, "there may be programming available that would meet L.M.'s needs." The probation officer also testified, in response to questioning by the court, that she had contacted several state programs that she knew about and had sought additional references from those programs but had not contacted colleagues in other counties to find out if other programming was available. Based on that testimony, the court concluded that it was "not satisfied that a more extensive search would not discover programming that would address [L.M.'s] needs."

The mere possibility that a more extensive search would reveal that adequate programming was available, however, is a far cry from clear and convincing evidence that an adequate program was available. L.M.'s burden was to establish clearly and convincingly that adequate programming existed. L.M. did not meet that burden.

This court's decision should not be construed to mean that L.M. must be certified after all the factors are adequately balanced on remand in light of the correct burden of proof. In fact, some of the factors clearly do not favor certification. The district court has broad discretion in balancing the statutory factors. But the factors must be balanced in light of the correct burden of proof.

### DECISION

The district court abused its discretion by shifting to the state the burden of rebutting the presumption of certification with evidence that L.M. was not amenable to treatment and that no adequate programming existed in the juvenile system to address his needs. We remand for further proceedings consistent with this opinion. The district court may reopen the record

to conduct a further evidentiary hearing, but is not required to do so.

**Reversed and remanded.**