## STATE v. EDWARD EUGENE DICKSON.

244 N. W. 2d 738.

July 30, 1976—No. 45394.

C. *Paul Jones*, State Public Defender, and *David M. Gross*, Assistant State Public Defender, for appellant.

*Warren Spannaus*, Attorney General, *William B. Randall*, County Attorney, and *Steven C. DeCoster*, Assistant County Attorney, for respondent.

Heard before Rogosheske, Kelly, and Scott, JJ., and considered and decided by the court en banc.

SCOTT, JUSTICE.

This is an appeal from a conviction following a jury trial in the Ramsey County District Court for distribution of heroin to one Beverly A. Johnson.

On October 14, 1973, Ms. Johnson, an informer for the Metropolitan Area Narcotics Squad (MANS), was given $290 by Detective Richard Kotasek to make a heroin purchase. After she received the money, Detective James Decowski and Officer Wayne Billings followed her and maintained surveillance in their cars outside Triviski's Bar at Selby and St. Albans in St. Paul. Ms. Johnson entered the bar where she met Bobby Banner whom she had contacted earlier about purchasing heroin. After Banner made a phone call, Ms. Johnson left the bar with another man to inspect an apartment down the street which was available for rent. When she returned 15 minutes later, Ms. Johnson joined Banner, who was standing next to a red Buick across the street from Triviski's. Ms. Johnson handed the $290 to Banner, who handed it to a male in the Buick. The driver of the car was identified by both officers doing surveillance and by Ms. Johnson as the defendant. Subsequently, through a motor vehicle registration check, the defendant was identified as the owner of the Buick. After receiving the money, the defendant drove away and returned 15 minutes later to Triviski's Bar. He entered the bar and handed a tinfoil packet to Banner, and then left. Ms. Johnson and Banner left the bar and took a cab to a Minneapolis

apartment where Banner's daughter lived. Ms. Johnson accompanied Banner while he obtained a strainer and some tinfoil from the apartment. They then took a cab to an apartment in Brooklyn Center. Shortly thereafter, Ms. Johnson delivered some of the substance which had been purchased from the defendant to a MANS agent. The agent gave it to a chemist for the Minneapolis Health Department who identified the substance in the tinfoil packet as heroin.

The issues presented are:

(1)   Was the indictment of the defendant sufficient to inform him of the charge of distribution of heroin to Beverly Johnson?

(2)   Did the prosecutor's comments on the absence of a witness for the state prejudice the jury against defendant?

■   The indictment charged that the defendant "* * * did wrongfully and unlawfully distribute to Beverly A. Johnson heroin * * *." Defendant argues that the evidence at trial showed only a purchase of heroin by Ms. Johnson from Bobby Banner, not from the defendant.

The rule regarding the sufficiency of an indictment is well established. This court stated, in State v. Wurdemann, 265 Minn. 92, 94, 120 N. W. 2d 317, 318 (1963):

"An indictment or information, in order to be sufficient to support a conviction, must fairly apprise the defendant of the charge brought against him, in order, it has been said, that he might properly prepare his defense, and so that he is protected from subsequent prosecution for the same offense." [1]

Defendant contends that the instant situation is analogous to that in United States v. Raysor, 294 F. 2d 563 (3 Cir. 1961), in

---

[1] The United States Supreme Court recently reiterated the rule that an indictment is sufficient if it fairly informs the defendant of the charge and enables him to plead an acquittal or conviction in bar of future prosecutions. Hamling v. United States, 418 U. S. 87, 117, 94 S. Ct. 2887, 2907, 41 L. ed. 2d 590, 620 (1974).

which a conviction for selling narcotics was reversed because of a variance between the person named in the indictment as the recipient and the person proved to be the recipient at trial. The government in that case alleged that the informer who actually bought the narcotics was the agent of the officer. In this case there is no such allegation. The defendant was indicted, tried and convicted for distribution of heroin to Beverly Johnson. There is no variance between the indictment and the proof leading to the conviction. Also, unlike the Raysor case, the theory of the state's case did not change during trial. In Raysor, the jury was instructed that the defendant could be found guilty under an indictment for sale of heroin to a narcotics officer even if the sale was to an informant because of an agency relationship between the two. There was no such instruction here.

Beverly Johnson gave $290 to Bobby Banner who handed the money to the defendant in her presence. The defendant later returned and handed a packet of heroin to Bobby Banner in her presence. Banner later gave the heroin to Ms. Johnson. On these facts, a jury could find that the defendant had distributed heroin to Beverly Johnson. A contrary view would require that a conviction for distribution of narcotics could be obtained only for distribution to the first person who touched the narcotics. Such a finding would embroil prosecutions involving narcotics in what Judge Goodrich in his dissent in Raysor termed the "witty diversities of the law of sales." 294 F. 2d 567.

This case is similar to Lucas v. United States, 343 F. 2d 1 (8 Cir. 1965), in which it was held that it was not necessary to discuss the issue of a variance between indictment and conviction for sale of narcotics because the trial court accepted defendant's position that proof of sale to one person did not support an indictment charging sale to another. The jury was so instructed and the jury arguments of counsel treated this instruction as the law of the case. In this case, the jury was not given such an instruction and no such instruction was requested, but the argu-

ments of counsel treated this reasoning as the law of the case.[2]

Even if there had been a variance between the indictment and the conviction, it would still be necessary for the defendant to show that this variance deprived him of a substantial right, namely, the opportunity to prepare a defense to the charge against him. Berger v. United States, 295 U. S. 78, 55 S. Ct. 629, 79 L. ed. 1314 (1935). Defendant argues that he did not know who Beverly Johnson was and that the only other information relating to the charge in his indictment was the date, the county, and the statutes involved. Defendant cites State v. Ingram, 20 N. C. App. 464, 201 S. E. 2d 532 (1974), as authority for the proposition that the initial recipient and not the ultimate distributee must be alleged in the indictment. In the instant case, unlike the situation in Ingram where the seller never actually saw the alleged recipient, both Bobby Banner and Beverly Johnson were present when the money was given to the defendant and when the heroin was delivered. The defendant saw the money being given by Johnson to Banner. Therefore, both Banner and Johnson were recipients. Defendant's argument that he was surprised by the charge of distribution of heroin to Beverly Johnson is not persuasive where he knew that Bobby Banner and the woman with him were both purchasing the heroin.

■ During the state's closing argument, the following statements were made:

"What's the defendant's position here? Well, first of all, don't believe Beverly Johnson, because she's a bad person. That's basically his position. But if you're going to believe her, if these

---

[2] A similar case in the Seventh Circuit, United States v. Schennault, 429 F. 2d 852 (7 Cir. 1970), distinguished the Raysor case on the grounds that in Schennault, the government proceeded on the theory that the defendant and his accomplice were joint venturers as sellers of heroin to an undercover police officer. This is a strained attempt to make drug purchases correspond to the law of sales so as to fit the wording of an indictment. Such a classification is unnecessary where it is clear that the jury found a sale from the defendant to Beverly Johnson.

things did happen as she testified, and as the police see things happening, that certainly would corroborate her, if you're going to believe her at all, then you still can't find the defendant guilty because there was no distribution to the hand of Beverly Johnson. And that's a very interesting theory. In other words, while I may have distributed this, I distributed to Bobby Banner, and you haven't brought Bobby Banner in. Where is Bobby Banner? You think for one minute Bobby Banner is going to take that stand? For one minute?

"MR. RAY [defense counsel]: Object again, Your Honor, on the grounds that Counsel is attempting to tell the jury facts not in evidence, as to what a witness would or would not do.

"MR. GORECKI [prosecutor]: Well, I think I'm making a reasonable inference.

"MR. RAY: I think the inference is wrong, Counsel. It's prejudicial.

"MR. GORECKI: It is not prejudicial.

"THE COURT: I think it's proper argument.

"MR. GORECKI: Sure.

"THE COURT: He may proceed.

"MR. GORECKI: Do you think Bobby Banner is going to come in here? You better believe he won't. Does that make the distribution any different?"

The standard for review of a prosecutor's misconduct was elaborated on in State v. Caron, 300 Minn. 123, 127, 218 N. W. 2d 197, 200 (1974):

"* * * The test of determining whether prosecutorial misconduct was harmless depends partly upon the type of misconduct with which we are dealing. That is, the more serious the misconduct, the more certain of its effect this court has felt that it should be before labeling the error harmless. Thus, in cases involving unusually serious prosecutorial misconduct this court has required certainty beyond a reasonable doubt that the misconduct was harmless before affirming. * * * On the other hand, in cases involving less serious prosecutorial misconduct

this court has applied the test of whether the misconduct likely played a substantial part in influencing the jury to convict." [3]

The defendant argues that the prosecutor's statements denied him a fair trial in that they (1) implied that Banner would assert the right against self-incrimination if asked to testify, and (2) invited the jury to speculate that there was additional evidence incriminating the defendant that Banner might have offered.

Defendant cites Kinser v. Cooper, 413 F. 2d 730 (6 Cir. 1969), where the court held that it was prejudicial for the prosecutor to comment on the failure of a codefendant to testify. The court based its holding on the fact that the failure of a codefendant to testify where the codefendant is charged with aiding and abetting necessarily implicates the other defendant. However, the failure of an unindicted accomplice to testify does not necessarily implicate the defendant.

The state argues that the prosecutor's comments were nothing more than an argument that Bobby Banner's absence from the courtroom was irrelevant to the distribution to Beverly Johnson and that the failure of the prosecution to call Banner as a witness was immaterial.

In State v. Shupe, 293 Minn. 395, 196 N. W. 2d 127 (1972), this court granted a new trial where the prosecutor told the jury that there was supplementary testimony from other witnesses which he was prevented from submitting because of their "unexpected illness and hospitalization." Defendant argues that the prosecutor's statements in this case are an attempt to imply the defendant's guilt by suggesting that an accomplice would assert the right against self-incrimination. This court, in State v. Mitchell, 268 Minn. 513, 130 N. W. 2d 128 (1964), certiorari denied, 380 U. S. 984, 85 S. Ct. 1351, 14 L. ed. 2d 276 (1965), criticized the calling of a codefendant when the prosecution

---

[3] This court reaffirmed the Caron standard in State v. Johnson, 307 Minn. 501, 239 N. W. 2d 239 (1976), and State v. Fields, 306 Minn. 521, 237 N. W. 2d 634 (1976).

470

knows that he will invoke the Fifth Amendment right against self-incrimination. In State v. Jones, 277 Minn. 174, 152 N. W. 2d 67 (1967), this court reversed a conviction and ordered a new trial when the prosecution argued to the jury that a codefendant's refusal to deny that the defendant was his accomplice was an indication of the defendant's guilt. See, Annotation, 86 A. L. R. 2d 1443.

The defendant argues that the prosecution attempted indirectly to do what this court condemned in State v. Jones, *supra*. An examination of the full context of the prosecutor's remarks indicates otherwise. The prosecutor, anticipating an argument from defense counsel regarding the prosecution's failure to call a witness, attempted to minimize to the jury the importance of speculating on what that witness might state.[4] The comment, "You better believe he won't," may suggest that the witness has an unusually strong motive for not testifying, but it is not so prejudicial as to require a new trial.

Applying the standard of State v. Caron, *supra*, there is little doubt that the prosecutor's incidental comments in this case regarding the absence of an unindicted accomplice did not play a substantial part in influencing the jury to convict. Indeed, the prosecutor's statements, considering the strong evidence against the defendant, were harmless beyond a reasonable doubt.[5]

Affirmed.

---

[4] It should be noted that the Minnesota procedure differs from that used in other states and Federal jurisdictions in that the prosecutor is not allowed any closing summation to the jury after the closing argument by defense counsel. See, Rules of Criminal Procedure, Rule 26.03, subd. 11.

[5] It should be noted that subsequent to the trial of this case, State v. Thomas, 305 Minn. 513, 232 N. W. 2d 766 (1975), recommended a set of prophylactic procedures to avoid the situation presented here. Those procedures were reiterated in State v. Dillard, 307 Minn. 166, 238 N. W. 2d 440 (1976), and they represent the standards which will be applied in future cases.