STATE of Minnesota, Respondent,

v.

Henry BLUE, Appellant.

No. 81–902.

Supreme Court of Minnesota.

Dec. 10, 1982.

C. Paul Jones, Public Defender, and Mollie G. Raskind, Deputy State Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Thomas L. Johnson, County Atty., Vernon E. Bergstrom, Chief, Appellate Division, Thomas A. Weist, Rick Osborne, Asst. County Attys., and Beverly J. Wolfe, Law Clerk, Minneapolis, for respondent.

YETKA, Justice.

Appellant Blue was the first of three co-defendants tried separately on charges arising from events of the early morning hours of October 16, 1980. Blue, a 16-year-old juvenile certified for adult prosecution, was indicted for first-degree murder, attempted first-degree criminal sexual conduct, second-degree criminal sexual conduct, kidnapping, and aggravated robbery.[1] The jury found Blue guilty as charged on all counts except second-degree criminal sexual conduct. The defendant was found guilty only of an attempt to commit second-degree criminal sexual conduct. The trial court sentenced Blue to life imprisonment for first-degree murder; 20 years for kidnapping, to run consecutively to the life sentence; and 20 years for aggravated robbery, to run consecutively to the kidnapping sentence. The court withheld sentencing on the sex offenses, recognizing doubt about whether such sentences would be proper or would violate the double jeopardy rule because of the conviction for first-degree murder.

Defendant Blue appeals from all findings of guilt. He also appeals from the sentences he received on the grounds that they impermissibly exceed the Minnesota Sen-

---

1. The first three charges related to acts committed against Margaret Stadsvold. The kidnapping charge involved Thomas Michaelson; the aggravated robbery charge concerned both victims.

tencing Guidelines, both because of their length and because of their consecutive nature. We affirm the convictions and partially amend the sentencing.

In the early hours of October 16, 1980, Thomas Michaelson and Margaret Stadsvold were sitting in Michaelson's car, parked by Holden Avenue in Minneapolis. At the same time, Henry Blue and Roderick Jenkins, both juveniles, were walking nearby. A third juvenile, Joseph Givens, stopped the other two.

Givens informed Blue and Jenkins that there was a car with a man and a woman in it and suggested they rob them. The car was occupied by Stadsvold and Michaelson. Blue expressed concern that the man in the car might be armed. Givens replied that he had a knife. The trio approached the car. One of them, either Givens or Blue, jerked open the door and put a knife to Michaelson's throat. Jenkins got in the back seat while the remaining juvenile entered through the front passenger door.

Michaelson was forced to get into the back seat, where he was robbed. He was then taken from the back seat and put into the trunk. Blue's palm print and Jenkins' palm print were on the trunk. Stadsvold was forced into the back seat of the car. Givens also went into the back seat of the car. Blue was now in the driver's seat and Jenkins was in the front passenger seat.

According to Jenkins' statement to the Minneapolis Police, at this point "everybody told her [Stadsvold] she had to give some up." According to Blue's description of what happened, Givens said he was going to rape Stadsvold. "He said: 'I want it.'"

Givens attempted to undress Stadsvold, unzipping some of her clothing and placing his hand inside her clothing over her breast. Stadsvold struggled, screamed, escaped from the car, and started to run. Michaelson testified that he had heard the screams while he was locked in the trunk.

Blue got out of the car and caught Stadsvold. Jenkins later told police, "Blue punched her about two times, he picked up a stick and hit her four or five times be-cause she wouldn't shut up." Sargeant Robert Nelson of the Minneapolis Police Department said Blue admitted hitting Stadsvold "four or five times" with a board. In his own statement, Blue said he had hit Stadsvold two or three times. Blue told Sargeant Nelson that after he had finished beating Stadsvold, he checked and found that she was still breathing. Police found a blood-spattered board at the scene of the crime. The blood matched Stadsvold's blood type. The board was a 2- to 3-foot fence picket 3 inches wide and an inch thick. The fence picket was found broken into two pieces with blood on both sides of the break.

After Stadsvold fell, the three juveniles left. When they reached the Minneapolis Farmer's Market 2 or 3 blocks away, Givens decided to return to the scene. The only available account of what then transpired comes from Givens' own statement. When he returned to where Stadsvold had been struck down, "She was alive and then she walked about I'd say five feet something like that from where she was at and so I dragged her up on this hill after she had stopped walking but she was still talking though and then I had sex with her."

When the police arrived at the scene, they found the body of Stadsvold. The presence of possible drag marks arguably corroborated Givens' account. At the point where the body was found, there was a blood stain the size of a saucer. Some blood had seeped into the sand under the body.

The county medical examiner in charge of the case, Dr. Amatuzio, testified at length at the trial. Dr. Amatuzio testified that there were bruises on the victim's face and knuckles consistent with either a fall or a struggle. There was a bruise on her right arm that had been made while the victim was still alive. There were several scalp lacerations caused by blows from a rectangular, blunt instrument. There was also a bruise about 12 centimeters long on the left side of the victim's neck. This was also made by a blunt instrument.

Although the blows causing the scalp lacerations caused profuse bleeding, the actual

cause of death was the blow to the side of the neck which tore one of the victim's vertebral arteries, causing bleeding at the base of the brain in the so-called subarachnoid space. The blood accumulated in the area where the respiratory and vital centers are located. Through a mechanism not specifically understood by medical science, the accumulation of blood in this area shuts down the respiratory functions, causing loss of consciousness and then death.

Much attention was focused on the question of how long Stadsvold could have lived once the blow to the neck had been struck. The defense contended that Givens had actually struck the fatal blow when he returned to rape the victim. Defense argued that death from a torn vertebral artery would have been virtually instantaneous and that, since Stadsvold was alive when Givens returned at least several minutes later, Blue could not have caused the subarachnoid hemorrhage. After extensive questioning by defense counsel, the medical examiner agreed with the statement that "death could have occurred within a minute to five minutes." The medical examiner had previously estimated the time interval at "several minutes at least." Later, on redirect, Dr. Amatuzio opined that a person with a subarachnoid hemorrhage of the type sustained by Stadsvold could live up to 24 hours, although the period would more likely be one of minutes than hours.

The medical examiner had also collected semen samples from the victim. Testing revealed that of the four males at the scene of the assault, Michaelson, Jenkins, Givens, and Blue, the semen could only have come from Givens. Defense underscored the fact that it could not have come from Blue.

One other fact appellant has made much of in his brief is that, while the victim's head lacerations contained flecks of white paint which might have come from the fence picket, the neck bruise over the torn artery did not contain paint flecks. There is also evidence that two informants told Sargeant Robert Nelson that Givens had told them that he, as well as Blue, had hit the victim.

The defense cites three actions by the trial judge as grounds for reversal. First, the trial court admitted extrajudicial oral and written statements of Givens and Jenkins. Both had claimed their fifth amendment privilege against self-incrimination. Second, the judge refused a request by defense counsel for a jury instruction on the lesser included offense of aggravated assault and third-degree murder predicated on aggravated assault. Third, the appellant was given three consecutive sentences, two of which significantly exceeded Minnesota Sentencing Guidelines.

After his conviction and sentencing, Blue was compelled to testify at the trial of co-defendant Givens. Blue did not have counsel present when he testified.

The issues raised on appeal are:

1. Was the evidence sufficient to sustain a verdict of guilty of first-degree murder?

2. Did the admission of the oral and written statements by Givens and Jenkins violate appellant's sixth amendment rights under the confrontation clause and, if so, was the violation harmless error?

3. Did the trial court err in not giving an instruction on aggravated assault and on third-degree murder predicated on aggravated assault?

4. Were the sentences imposed on Blue excessive?

5. Was appellant denied his fifth amendment privilege against self-incrimination by being compelled to testify at a co-defendant's trial pending his own appeal?

■ 1. Appellant Blue was found guilty of murder in the first degree. Minn.Stat. § 609.185(2) (1980). The statute provides that one is guilty of murder in the first degree if he or she "[c]auses the death of a human being while committing or attempting to commit criminal sexual conduct in the first or second degree with force or violence, either upon or affecting such person or another." Also applicable is Minn. Stat. § 609.05, subd. 1 (1980), which pro-

vides: "A person is criminally liable for a crime committed by another if he intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime."

On the basis of these statutes, the question of guilt was one for the jury to decide because there was more than sufficient evidence to convict defendant. Defendant made every effort, but failed, to convince the jury that Givens had struck the fatal blow. This court does not try facts anew on appeal. *State v. Taylor,* 258 N.W.2d 615, 622 (Minn.1977). There was sufficient evidence for the jury reasonably to find the defendant guilty of murder in the first degree. *See State v. Thompson,* 273 Minn. 1, 36, 139 N.W.2d 490, 515, *cert. denied,* 385 U.S. 817, 87 S.Ct. 39, 17 L.Ed.2d 56 (1966).

■ 2. At trial, the court admitted, over repeated objections of defense counsel, oral and written statements made to the Minneapolis Police by Givens and Jenkins. Both men·refused to testify in person at Blue's trial, relying on their fifth amendment right against self-incrimination. Appellant argues that admission of these extrajudicial statements are, under the circumstances, a violation of his sixth amendment right to confront witnesses against him.

This court has previously addressed the admissibility of confessions by co-conspirators. *See State v. Hansen,* 312 N.W.2d 96 (Minn.1981); *State v. Black,* 291 N.W.2d 208 (Minn.1980). We need not, however, decide the issue of whether the admissions of these statements were error in this case. Even if they were inadmissible, we believe the admissions were harmless beyond a reasonable doubt. The defense was able to use Givens' statement to prove Givens alone went back to the scene after all three participants had left the crime site and thus to argue that Givens alone was responsible for the death. Moreover, the statements by all three participants were remarkably similar in describing what had occurred.

■ 3. At trial, the court instructed the jury on murder in the first degree under Minn.Stat. § 609.185(2) (1980) (causing death while committing or attempting to commit criminal sexual conduct in the first or second degree). The judge also instructed the jury on murder in the third degree under Minn.Stat. § 609.195(2) (1980), with aggravated robbery or kidnapping as the underlying felony. The jury was instructed it could not find defendant guilty of both first- and third-degree murder. The jury found defendant guilty of attempted first-degree criminal sexual conduct, attempted second-degree criminal sexual conduct, and first-degree murder. The jury also found defendant guilty of aggravated robbery and kidnapping, but acquitted him of third-degree murder.

On appeal, appellant claims he was entitled to an instruction of assault on a lesser included offense. Appellant asserts that, under the circumstances, aggravated assault is a lesser offense of murder. He argues that if there had been an instruction of aggravated assault as a lesser included offense, he might have been convicted of that alone and, consequently, convicted of third-degree murder only. In his brief to this court, appellant "assert[ed] that, because the jury was not instructed on aggravated assault (Assault I), he was denied a fair trial since the jury of laymen, having no familiarity with the different degrees of murder, were precluded from finding appellant guilty of third-degree murder since the instructions encompassed only first-and second-degree criminal conduct as the underlying offense."

There are a number of flaws in appellant's argument. First, the court did give an instruction of third-degree murder, with aggravated robbery and kidnapping as the underlying offenses. Second, respondent persuasively argues that aggravated assault is not a lesser included offense of any of the crimes charged. Appellant relies on *State v. Morgan,* 296 N.W.2d 397 (Minn.1980), for its contention that aggravated assault is a lesser included offense. In *Morgan,* the court held that aggravated robbery was a lesser included offense of murder in the third degree. Appellant, however, ignores the plain language of the opinion. It states that aggravated robbery was included only

because the indictment charged it as the underlying felony for the felony murder charge.

Here, as appellant notes, aggravated assault is *not* charged in the indictment. Even if it had been, it seems clear that it would only be relevant to a charge of third-degree felony murder, not to the first-degree murder count.

4. In addition to a mandatory life sentence for murder in the first degree, the trial court imposed a consecutive sentence of 20 years for kidnapping (locking Michaelson in the car trunk) and a second consecutive sentence of 20 years for aggravated robbery of Stadsvold and Michaelson. Appellant is correct in his contention that these sentences are excessive.

■ Appellant maintains that all crimes of which he was convicted were part of a single behavioral incident and therefore, under the terms of Minn.Stat. § 609.035 (1980), he can only be punished for one of them. *State v. Johnson,* 273 Minn. 394, 141 N.W.2d 517 (1966). Respondent replies that the various crimes were separate behavioral incidents. *State v. Powless,* 272 N.W.2d 258 (Minn.1978). Respondent also argues that, even if there is only one behavioral incident, the fact that there are two victims justifies the imposition of more than one sentence. *State v. Prudhomme,* 303 Minn. 376, 378–79, 228 N.W.2d 243, 245 (1975) (in one behavioral incident with three victims, three sentences could be imposed). We agree with respondent.

■ The second sentencing issue raised by appellant is that the length of the sentences impermissibly exceeded the presumptive sentences contained in the Minnesota Sentencing Guidelines. The presumptive sentence for aggravated robbery, a severity level VII offense, is 24 months based on a criminal history score of zero. There are several severity levels for kidnapping, depending on the exact nature of the kidnapping. In this case, where the court could have found kidnapping not in a safe place (victim left in a car trunk), but *not* kidnapping with great bodily harm, the offense is assigned a severity level of VII. Again, the presumptive sentence is 24 months.

During the course of sentencing, the court acknowledged that he was exceeding the presumptive sentences and, in accordance with the Guidelines, listed his reasons for so doing. In explaining the deviation from the presumptive kidnapping sentence (which the judge incorrectly stated was 43 months), the court cited the victim's physical impairment from drinking, the fact that he was held at knifepoint, and the "particular cruelty" with which he had been treated, presumably referring to his being locked in the trunk of his car.

On the aggravated robbery sentence, the judge listed several aggravating factors. The victims were particularly vulnerable, being on a dark sidestreet, and were, in the court's opinion, treated with particular cruelty. The judge also made it clear that he felt the "aggravated robbery was a separate criminal purpose with a separate criminal intent distinct from the kidnapping and first-degree murder charge."

■ Given the purposes of the sentencing guidelines and this court's cases dealing with the Guidelines, the departures here were excessive. The aggravated robbery lacks any distinguishing characteristics. Although Mrs. Stadsvold was later subjected to savage, and ultimately fatal, treatment, the prosecution and the judge both seem to be correct in their assessment of the robbery as a separate event from the sexual assault. *See State v. Gilbert,* 262 N.W. 334, 338 (Minn.1977) (sex offenses and aggravated assault held to be separate offenses although separated by only a brief period of time). There is no justification for exceeding the 24-month presumptive sentence. Where the legislature has clearly expressed its intent in authorizing the Guidelines to achieve uniform sentencing, that intent should prevail absent unusual circumstances.

As for the kidnapping, the most salient aggravating circumstance would be locking Michaelson in the trunk of his car. *State v. Ming Sen Shiue,* 326 N.W.2d 648 (Minn., 1982), recently decided by this court, also

involved imprisonment in a car trunk. There, a sentence 3.4 times the presumptive sentence was upheld. The victim in *Sen Shiue* was a little boy; the victim in this case was an adult male whose ability was not so impaired as to prevent him from opening the trunk lid with the aid of hand tools present in the trunk. A departure is justified here, but no more than the doubling of sentence set as an upper limit in *State v. Evans,* 311 N.W.2d 481, 483 (Minn.1981). This is simply not one of those "rare cases in which the facts are so unusually compelling that an even greater degree of departure will be justified." *Id.*

Assuming that the robbery and kidnapping were separate behavioral incidents from the sexual assault and homicide, and noting that the kidnapping charge is against a separate person, the absolute maximum sentence justified is the life sentence for murder plus 48 months (kidnapping doubled) plus 24 months (aggravated robbery). This works out to life plus 6 years. We hereby substitute these sentences for those imposed by the trial court.

5. Appellant Blue was called upon to testify at the trial of his co-defendant, Joseph Givens. Givens was tried after Blue had been convicted, but during the pendency of this appeal. Appellant argues that compelling him to testify in these circumstances violates his fifth amendment privilege against self-incrimination since, if he is granted a new trial by this court, his testimony at the Givens trial might be used against him. Appellant also argues he had the right to be represented by counsel. Since defendant is denied a new trial, these questions need not be answered.

Defendant's convictions are thus affirmed. We affirm his sentence to life for the first-degree murder conviction. The defendant's sentence for kidnapping is reduced to 48 months to run consecutive to the life sentence and his sentence for the aggravated robbery is reduced to 24 months to run consecutively to the kidnapping sentence.