**STATE of Minnesota, Respondent,**

v.

**Kennedy Amenya GISEGE, Appellant.**

No. C0–96–305.

Supreme Court of Minnesota.

March 20, 1997.

John M. Stuart, Minnesota State Public Defender, Mark F. Anderson, Assistant State Public Defender, Minneapolis, for Appellant

Hubert H. Humphrey, III, Minnesota Attorney General, St. Paul, Michael O. Freeman, Hennepin County Attorney, Linda M. Freyer, Assistant County Attorney, Minneapolis, for Respondent.

## OPINION

TOMLJANOVICH, Justice.

The charges in this case arose from a domestic incident that occurred at the North Minneapolis residence shared by the appellant, Kennedy Amenya Gisege, his wife Heather Brasch, their infant daughter Kayla, and Adrian Brasch, the 3–year–old son of Heather Brasch by a previous relationship. A Hennepin County grand jury indicted appellant for the first-degree murder of Adrian and the attempted first-degree murder or attempted second-degree murder of Brasch. Following trial, a jury found appellant guilty of the first-degree murder of Adrian and of what the trial court had instructed was the lesser-included charge of the first-degree assault of Brasch. The court sentenced the appellant to a mandatory life term for the first-degree murder and a consecutive 129–month sentence for the first-degree assault.

We affirm both convictions and the accompanying sentences.

The following facts are undisputed.

Shortly after 2 a.m. on April 17, 1995, a motorist saw Brasch running down a street with blood all over her. The motorist stopped. Brasch told the motorist she had been stabbed by her husband and that "he is going to kill my baby." The motorist's boyfriend then called 911. The 911 operator arranged for an ambulance and forwarded the information to a police dispatcher who sent officers to meet Brasch. When the police arrived, Brasch told them she had been stabbed by her husband and that he was going to kill her 3–year–old child. She gave the police her address and they left for the residence. An ambulance later took Brasch to the hospital. She had a laceration on her head, a laceration extending across her neck, and lacerations on her hand and abdomen. The hospital released her 48 hours later.

After arriving at the residence, the police observed a man, later identified as the appellant, inside the house. After a time, the appellant walked out the back door and the police took him into custody. The appellant had fresh blood on his hands and blood stains on his body and shorts. The police took appellant to the hospital for treatment. Tests indicated that appellant had a .29 percent blood alcohol level. The officers who remained at the scene then entered the residence. They found Kayla sleeping and unharmed in the downstairs bedroom. They found Adrian crouched in a corner in an upstairs bedroom, covered in blood from multiple stab wounds to the head. He was alive but had trouble breathing. An ambulance transported Adrian to the hospital where doctors determined that Adrian suffered a series of very deep cuts to the scalp and face. Doctors declared him brain dead two days later. Forensic scientists testified that tests indicated that the blood in Adrian's bedroom was Adrian's, and that the blood on appellant was that of Adrian and Brasch.

The following facts are disputed.

The appellant testified that Brasch killed Adrian and then attacked the appellant fol-

lowing an argument. According to the appellant, Brasch took both children to her mother's for Easter dinner while the appellant remained home. The appellant fell asleep in his bed and was awakened by Brasch when she returned home. The couple began to argue in the bedroom and then moved into the sitting room. The argument lasted for close to two hours. The appellant then told Brasch he wanted a divorce and planned to move back to his native Kenya. After Brasch became hysterical, the appellant went back into the downstairs bedroom. The appellant testified that he heard Brasch move things in the kitchen sink. Shortly thereafter, the appellant walked into the kitchen, but Brasch was not there. Appellant then heard Adrian scream. Appellant subsequently saw Brasch come into the kitchen. She threw something into the sink and then threw a knife at appellant. The struggle moved into the bedroom and then the living room. Eventually, appellant gained control of the knife and held Brasch down. Brasch then told appellant she had killed Adrian. Appellant ran upstairs where he saw Adrian crouched by the wall and covered in blood. Appellant moved Adrian to the bed and went back downstairs, but Brasch was gone. The police arrived shortly thereafter.

Brasch testified that the appellant attacked her and threatened to kill Adrian. According to Brasch, she was asleep on a couch in the living room when appellant awoke her. He asked that she come to bed with him, and then they began arguing. Brasch told appellant that she wanted to end the marriage. Appellant turned off the living room light and went back to the bedroom. Brasch fell back asleep face down on the couch. She awoke, however, when appellant climbed on her back, pulled back her hair, and cut her throat and forehead with a knife. They struggled over the knife, and he continued to stab the top of her head. Finally, he stopped and threw the knife down after Brasch agreed to go to bed with him. After moving into the bedroom, she suggest-

ed that she call an ambulance, but discovered the phones had been disconnected. The appellant began stabbing Brasch in the ribs. Brasch wrested the knife away from appellant. He went back into the kitchen and Brasch ran into the bathroom and locked the door. Brasch testified that the appellant said "I am going upstairs to get Adrian. I have nothing to live for and neither does he." Shortly thereafter, Brasch climbed out the window and ran down the street for help.

A grand jury indicted appellant of first-degree murder of Adrian, and attempted first-degree murder and attempted second-degree murder of Brasch. At the close of trial, the defense apparently requested that the court also instruct the jury on what the defense classified as the lesser-included charge of first-degree assault of Brasch. The court apparently granted that request, and the jury convicted appellant of first-degree murder for the death of Adrian and first-degree assault of Brasch.[1] The appellant now contends, however, that the trial court erred in instructing the jury on first-degree assault because the grand jury did not indict him of that offense and because it is not a lesser-included offense of either attempted first-degree murder or attempted second-degree murder. The appellant also contends that the trial court erred in failing to give his requested self-defense instruction after each of the three charges involving Brasch.[2]

## I.

Before we decide whether it was error for the trial court to instruct the jury on first-degree assault, we must decide whether first-degree assault is a lesser-included offense of either attempted first-degree murder or attempted second-degree murder. And if we conclude that first-degree assault is not a lesser-included offense of either attempted first-degree or attempted second-degree murder, we must determine whether the inclusion of such a charge would be improper.

---

1. The jury also found the appellant not guilty of either attempted murder in the first degree or attempted murder in the second degree of Brasch.

2. The appellant does not appeal his first-degree murder conviction.

The legislature has defined a lesser-included offense as:

(1) a lesser degree of the same crime; or (2) an attempt to commit the crime charged; or (3) an attempt to commit a lesser degree of the same crime; or (4) a crime necessarily proved if the crime charged were proved; or (5) a petty misdemeanor necessarily proved if the misdemeanor charge were proved.

Minn.Stat. § 609.04, subd. 1 (1996). Because first-degree assault is not a lesser degree of attempted murder, *see* Minn.Stat. § 609.221 (1996) (first-degree assault), Minn.Stat. § 609.17 (1996) (attempt), Minn.Stat. § 609.185 (1996) (first-degree murder), Minn.Stat. § 609.19 (1996) (second-degree murder); or an *attempt* to commit attempted murder, *see id.;* or an attempt to commit a *lesser degree* of attempted murder, *see id.,* or a petty misdemeanor, *see* Minn.Stat. § 609.221 (1996), it will be a lesser-included offense of attempted murder only if it is "necessarily proved" when attempted murder is proved. *See* Minn.Stat. § 609.04, subd. 1(4) (1996).

■ In determining whether one offense necessarily is proved by the proof of another, "the trial court must look at the statutory definitions rather than the facts in a particular case." *State v. Gayles,* 327 N.W.2d 1, 3 (Minn.1982). A person commits attempted murder when he or she, "with intent to commit a [murder], does an act which is a substantial step toward * * * the commission of the [murder]." Minn.Stat. § 609.17 (1996). The necessary mens rea for first-degree murder is "premeditation and with intent to effect the death of the person." Minn.Stat. § 609.185(1) (1996). The necessary mens rea for second-degree murder is "intent to effect the death of the person * * * without premeditation." Minn.Stat. § 609.19(1) (1996).

■ First-degree assault, however, includes "great bodily harm" as a necessary element. Minn.Stat. § 609.221 (1996). Consequently, the state does not necessarily prove first-degree assault by proving attempted first-degree murder or attempted second-degree murder because these two crimes do not require proof of bodily harm. Although it is true that the victim in the case at bar did suffer great bodily harm, such a factual finding is irrelevant for the purposes of determining whether the court properly added a charge for a lesser-included offense. *Gayles,* 327 N.W.2d at 3. First-degree assault, therefore, is not a lesser-included offense of either attempted first-degree murder or attempted second-degree murder. Minn.Stat. § 609.04 (1996); *see also State v. Whisonant,* 331 N.W.2d 766, 769 (Minn.1983) (second-degree assault is not a lesser-included offense of attempted first-degree murder); *State v. Blue,* 327 N.W.2d 7 (Minn.1982) (aggravated assault is not a lesser-included offense of murder); *Gayles,* 327 N.W.2d at 3 (assault with dangerous weapon is not lesser-included offense of second-degree murder).

■ We next turn to the first-degree assault charge itself, and whether its inclusion was improper. The charges upon which the state may proceed at trial must be included within "the indictment, complaint or tab charge." *See* Minn.R.Crim.P. 10.01; *see also* Minn.R.Crim.P. 15.08 (requiring prosecutor to file new complaint when defendant pleads to a crime different than the one charged); Minn.R.Crim.P. 17.01 (requiring an offense punishable by life imprisonment to be prosecuted by indictment); *see also State v. Voracek,* 353 N.W.2d 219, 220 (Minn.App.1984) ("It is elementary that one must be tried and convicted only of the accused charge or a lesser included offense."). As the United States Supreme Court has stated: "It is ancient doctrine of both the common law and of our Constitution that a defendant cannot be held to answer a charge not contained in the indictment brought against him." *Schmuck v. United States,* 489 U.S. 705, 717, 109 S.Ct. 1443, 1451, 103 L.Ed.2d 734 (1989). It is worth noting, however, that the appellant could have been indicted or charged with both attempted murder in the first and second degrees and first-degree assault. *See* Minn.Stat. § 609.035 (1996) ("All the offenses, if prosecuted, shall be included in one prosecution which shall be stated in separate counts."). Furthermore, a jury arguably could have convicted appellant of both attempted murder and first-degree assault, assuming the state could have shown that the violations arose out of more than one behav-

ioral incident. *State v. Hartfield*, 459 N.W.2d 668, 670 (Minn.1990); Minn.Stat. § 609.035 (1996) (prohibiting multiple convictions for offenses arising out of same behavioral incident). The problem in this case, therefore, arises from the timing of the first-degree assault charge.

Minnesota rules of criminal procedure preclude the trial court from adding new and different charges once jeopardy has attached. Minn.R.Crim.P. 17.05; *State v. Alexander*, 290 N.W.2d 745, 748 (Minn.1980) (stating that Rule 17.05 "prohibits the amending of complaints to charge additional offenses after a trial has commenced"); *State v. Doeden*, 309 Minn. 544, 546–47, 245 N.W.2d 233, 234 (1976) (applying Rule 17.05 to motions to amend after commencement of trial). A jury can, however, find the defendant guilty of any lesser-*included* offense, whether or not the lesser-included offense was part of the complaint or indictment.[3] Minn.Stat. § 631.14 (1996) ("In all other cases, the defendant may be found guilty of any offense necessarily included in that offense with which the defendant is charged in the indictment or complaint."). Consequently, the trial court could have instructed the jury to find the defendant guilty of any offense necessarily included in the offenses with which the defendant was charged.

It is undisputed that the trial court added the charge of first-degree assault after the trial had begun. It also is clear from our earlier analysis that first-degree assault is not a lesser-included offense of either attempted first-degree murder or attempted second-degree murder, and that state law did not *require* the trial court to grant the defendant's request for the instruction. *State v. Coleman*, 373 N.W.2d 777 (Minn.1985). The question thus becomes whether state law *prohibited* the trial court from granting the defense's request for the instruction.

■ The purpose of restricting the *prosecution* to the charges included in either the complaint or indictment is to provide the defendant with notice and an opportunity to prepare his or her defense. *State v. Clark*, 270 Minn. 538, 551, 134 N.W.2d 857, 867 (1965). As the Supreme Court has stated: "Were the prosecutor able to request an instruction on an offense whose elements were not charged in the indictment, this right to notice would be placed in jeopardy." *Schmuck*, 489 U.S. at 718, 109 S.Ct. at 1451. Similarly, the Supreme Court held in *Schmuck* that under the federal rules of criminal procedure, the same restriction must apply to a defendant's requests for instructions that include lesser but nonincluded offenses. *Id.* at 717–18, 109 S.Ct. at 1451–52. Like Fed.R.Crim.P. 31(c), Minn. Stat. § 609.04 employs the "elements test."[4] This test requires a court to compare the statutory elements of the lesser crime with the statutory elements of the greater crime. *See Gayles*, 327 N.W.2d at 3. The Supreme Court stated that fairness requires that neither side receive an instruction on a lesser but nonincluded offense.

> Because the elements approach involves a textual comparison of criminal statutes and does not depend on inferences that may be drawn from evidence introduced at trial, the elements approach permits *both sides* to know in advance what jury instructions will be available and to plan their trial strategies accordingly.

*Schmuck*, 489 U.S. at 720, 109 S.Ct. at 1453 (emphasis added). Because our rule employs the same elements approach, we hold that the trial court had no discretion to grant the defendant's request for a jury instruction regarding a lesser but nonincluded offense, and therefore erred in instructing the jury on first-degree assault. *See* Minn.R.Crim.P. 17.03, subd. 4 ("On motion of the defendant, the court may order two or more indictments, complaints, tab charges, or any combination thereof to be tried together."). We thus turn our attention to the question of

---

3. Such a finding "is a bar to further prosecution of any included offense." Minn.Stat. § 609.04, subd. 2 (1996).

4. Only when all of the elements of the lesser crime are included in the elements of the greater crime, can a court instruct the jury on the lesser

crime. The elements test "permits lesser offense instructions only in those cases where the indictment contains the elements of both offenses and thereby gives notice to the defendant that he may be convicted on either charge." *Schmuck*, 489 U.S. at 718, 109 S.Ct. at 1452.

whether the trial court's error in granting the defendant's request for the jury instruction compels us to vacate the conviction.

## II.

 Conceding that the trial court committed error, the state argues that this court should not vacate the conviction because it was the defendant who invited the error. The general rule in Minnesota is that "a party cannot avail himself of invited error." *Majerus v. Guelsow,* 262 Minn. 1, 11, 113 N.W.2d 450, 457 (1962) (citing *McAlpine v. Fidelity & Cas. Co. of New York,* 134 Minn. 192, 199, 158 N.W. 967, 970 (1916)). Typically, this doctrine is based on waiver and the idea that a defendant who fails to object to an instruction below loses his or her right to claim on appeal that the instruction was erroneous. *State v. Harris,* 255 N.W.2d 831, 831 (Minn.1977) ("Since defense counsel not only did not object to the instructions but requested instructions similar to those the court gave, we must hold that defendant waived" its argument that the instruction was erroneous.). When an error is one of fundamental law, however, this court will review the issue even though it was not preserved below. Minn.R.Crim.P. 26.03, subd. 18(3) ("An error in the instructions with respect to fundamental law or controlling principle may be assigned in a motion for a new trial though it was not otherwise called to the attention of the court."); *see State v. McKenzie,* 532 N.W.2d 210, 222 n. 12 (Minn.1995); *State v. LaForge,* 347 N.W.2d 247, 251 (Minn.1984).[5] Typically, the failure of an indictment or complaint to include the crime with which the defendant was convicted is an error of fundamental law. *See Danaher v. United States,* 39 F.2d 325, 331 (8th Cir.1930) (stating that "if the indictment failed to charge an offense,

no formal action on the part of the defendant was necessary to save the point"); *Dropps v. United States,* 34 F.2d 15, 16 (8th Cir.1929) (stating that "[n]otwithstanding the sufficiency of the indictment was not attacked in court below, the question whether it charges any offense may be raised here for the first time").

 The state, however, offers numerous foreign cases for the proposition that the doctrine of invited error estops a defendant who requests and then receives an instruction on a lesser *but nonincluded* offense from later complaining of the error. Many of the cases, however, deal with issues far less fundamental than the one in the case at bar and are, therefore, unpersuasive. *See United States v. Baldwin,* 987 F.2d 1432, 1437 (9th Cir.1993) (whether an instruction misstated an element of the crime); *United States v. Fulford,* 980 F.2d 1110, 1116 (7th Cir.1992) (whether hearsay testimony constituted plain error); *United States v. Reyes–Alvarado,* 963 F.2d 1184, 1187 (9th Cir.1992) (whether admission of a co-defendant's statement was invited error); *United States v. Taylor,* 828 F.2d 630, 633 (10th Cir.1987) (whether an instruction on the burden of proof in regard to venue was erroneous). Likewise, the state's reliance on a North Dakota Supreme Court case with facts similar to the case at bar is unpersuasive because the court did not base its decision entirely on invited error. *State v. Sheldon,* 301 N.W.2d 604, 610, 611 (N.D.1980) (stating that instruction for lesser but nonincluded crime did not substantially prejudice defendant who was convicted of a lesser and included crime).

The state does cite two cases that directly support the proposition that a defendant who asks for and receives an instruction on a

5. The state argues that invited error and unobjected-to-error are different, and that the doctrines of plain error and fundamental law do not apply to invited error. In other words, the state is asking that this court refuse to review any case in which a party appeals the validity of an instruction requested by the same party. But that is not the law in this state. As this court has stated, "conceding the right of the court to review, in a special case, the correctness of an instruction at the instance of a party who has procured it to be given, a new trial should not be granted unless the charge was substantially

wrong and apparently prejudicial to the defendant." *McAlpine v. Fidelity & Cas. Co. of New York,* 134 Minn. 192, 199, 158 N.W. 967, 970 (Minn.1916). In *McAlpine,* this court did not find a result prejudicial to the appellant, but it did not reject the appellant's claims out of hand. Instead it chose to examine the erroneous instruction at issue and determined that it "was not the important question in the case from the viewpoint of the jury." *Id.* The same cannot be said in the case at bar, where the jury convicted the defendant of the crime included in the erroneous instruction.

lesser but nonincluded offense cannot later claim the instruction was erroneously granted. *Griffith v. State*, 188 Ga.App. 789, 374 S.E.2d 359 (1988); *State v. Ross*, 100 N.M. 48, 665 P.2d 310 (Ct.App.1983). But of these two, only *Griffith* relies entirely on the doctrine of invited error. "While it is true that simple battery is not, as a matter of law, a lesser crime included in the crime of child molestation, it is equally true that induced error cannot be complained of on appeal." *Griffith*, 374 S.E.2d at 360 (citations omitted). *Ross*, on the other hand, also relies on the fact that a defendant who sought an instruction for a lesser but nonincluded crime cannot be prejudiced by defending against a charge that was not made part of the complaint or indictment. "Defendant has nowhere argued that the giving of the instruction sought by him on [the lesser nonincluded charge] prejudiced him in the defense of the case, or that he did not have proper notice." *Ross*, 665 P.2d at 313–14. Although the difference between the two theories is subtle, it is important. Under invited error, an appellate court will not hear the appellant's argument because it is deemed to be waived. *Baldwin*, 987 F.2d at 1437 (basing decision on theory that an appellant who invited error through an affirmative act could not possibly have preserved the issue by objecting to it). In addition, courts have utilized invited error to discourage litigants from intentionally creating appealable issues. *State v. Kortness*, 284 Minn. 555, 558, 170 N.W.2d 210, 213 (1969) ("A defendant should not be permitted to court error in order to preserve a basis for appeal and thus force the state into the 'cumbersome necessity of a new trial.'" (Citations omitted)). The court in *Ross*, meanwhile, considered the appellant's argument on its merits. *Ross*, 665 P.2d at 313–14. Although the court ultimately decided that the appellant's argument was without merit, it did so only after concluding that the appellant was not harmed by the inclusion of the lesser but nonincluded crime. *Id.*

■ Because we conclude that it is fundamental error to convict a defendant of a crime with which he or she was not charged, we adopt the rule used in *Ross* and will examine the merits of the appellant's claim under the doctrine of reversible error.

## III.

■ Although the first-degree assault conviction was at variance with the indictment, we will reverse the conviction only if this variance deprived the defendant "of a substantial right, namely, the opportunity to prepare a defense to the charge against him." *State v. Dickson*, 309 Minn. 463, 467, 244 N.W.2d 738, 741 (1976). Ultimately, we must ask whether the erroneous charge denied the defendant the opportunity to prepare an adequate defense. *Id.* Considering that the defendant in the case at bar requested the lesser charge of first-degree assault, he hardly can claim, let alone show, that the inclusion of the lesser but nonincluded charge hindered his opportunity to prepare a defense. Consequently, we conclude that the error, although fundamental, was not reversible.

## IV.

■ The defense also argues that the trial court erred by giving its requested self-defense instruction only once. The defense had requested that the trial court include the instruction with each of the three crimes charged in connection with the altercation with Heather Brasch. Instead, the trial court, without objection, instructed the jury on the elements of attempted first-degree murder and attempted second-degree murder before instructing the jury on self defense. At the close of the self-defense instruction, the court stated:

> The state has the burden of proving beyond a reasonable doubt that the defendant did not act in self defense. The law provides that upon prosecution of a person for a crime, if the person is not guilty of that crime, the person may nonetheless be guilty of a lesser crime. The lesser crimes in this case as to the charges involving Heather Brasch are: attempted murder in the second degree; and assault in the first degree.

The trial court then instructed the jury on the elements of first-degree assault. At the close of instructions and after a side-bar

**160**

discussion with counsel, the court further instructed the jury:

All right, just by way of clarification, you were given an instruction on self-defense. Please be aware that the self-defense instruction applies to all the charges, including the lesser included that involved conduct involving Heather Brasch.

In reviewing the sufficiency of the trial court's jury instructions, the instructions must be viewed as a whole and in their entirety. *State v. Auchampach*, 540 N.W.2d 808, 816 (Minn.1995). As discussed above, failure to challenge a jury instruction at trial waives the right to appeal that issue unless the error is one of fundamental law and results in substantial and material prejudice to defendant's rights. Minn.R.Crim.P. 26.03, subd. 18(3); *State v. Dolbeare*, 511 N.W.2d 443, 446 (Minn.1994). The failure to include a self-defense instruction before each charged crime is not error if the instructions "as a whole make it clear that the lack of 'excuse or justification' element was also a necessary ingredient of the lesser offenses." *State v. Axilrod*, 248 Minn. 204, 211–12, 79 N.W.2d 677, 683 (1956). Even when there is a technical error in the court's charge of self defense, it is error without prejudice when the state's evidence established that the crime was committed without excuse or justification. *Id.*

In the case at bar, the defense did not object to the trial court's failure to include the self-defense instruction within the specific elements of each charged crime. In addition, the defense offers no support for the proposition that it is a fundamental error of law for a trial court to fail to give self-defense instructions within the specific elements of each charged crime. Although it is at least arguable that the instruction could have confused the jury,[6] there is no indication that such confusion would have substantially and materially prejudiced the defendant. The defense's theory of the case was that Heather Brasch had killed her son and then attacked the defendant. Given that the

jury found enough evidence to find the defendant guilty of the first-degree murder of Adrian Brasch, it seems unlikely they were prepared to accept the appellant's self-defense theory of the case. Consequently, any error would be without prejudice.

Affirmed.

---

**6.** It is possible that the jury could have understood the instruction to mean that while the defendant's act of self defense could have made him not guilty of attempted murder, it did not

apply to the lesser crime of aggravated assault. Given the clarifying instruction, however, even this possibility appears remote.