*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1396**

State of Minnesota,
Respondent,

vs.

Steven Anthony Ehlen,
Appellant.

**Filed July 21, 2014
Affirmed
Ross, Judge**

Stearns County District Court
File No. 73-CR-12-11564

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Janelle Kendall, Stearns County Attorney, Michael J. Lieberg, Assistant County Attorney, St. Cloud, Minnesota (for respondent)

Daniel C. Guerrero, Meshbesher & Spence, Ltd., Minneapolis, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Kirk, Judge; and Klaphake, Judge. [*]

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**ROSS**, Judge

Stearns County charged Steven Ehlen with eight gambling-related counts after Ehlen and his partners began a business that they described as a sweepstakes fundraiser for charities. Ehlen cross-examined state witnesses and elicited testimony that he maintains compromised his right to a fair trial. The jury convicted him on all counts. Because Ehlen elicited the now-challenged testimony to further his trial strategy and the district court's decision not to prevent him from following that strategy did not infringe on his right to a fair trial, we affirm.

## FACTS

Agents in the Alcohol and Gambling Enforcement Division (AGED) of the Minnesota Department of Public Safety received tips in June 2012 that a business that might offer gambling was planning to open in St. Cloud. Agent Jill Ahart investigated Triple Crown Sweepstakes, co-owned by Steve Ehlen and a partnership also named Triple Crown Sweepstakes. Agent Ahart contacted Richard Petty, an attorney and Triple Crown partner, to discuss the proposed business. The business would ostensibly run a charity-fundraising sweepstakes in which each patron would receive one free daily entry entitling her to 100 credits usable on the venue's machines. The machines resembled video slot machines but the result of each entry was predetermined. Patrons could learn the result in one of three ways: by asking a store clerk, by pressing a "quick reveal" button on a machine, or by playing one of the games. Patrons could obtain more entries,

and more credits, only by making a donation to a designated charity. Each sweepstakes would include 250,000 entries and disburse $231,250 among those entries.

Agent Ahart told Petty that she believed Triple Crown's planned business model would constitute a lottery and violate gambling statutes. Petty disagreed. Agent Ahart referred the case to Joseph Newton, the department's legal counsel. Newton sent Petty a letter in July 2012 stating the department's position that the sweepstakes and the machines would violate gambling laws, in part because the business would offer entries in exchange for consideration, specifically, a donation.

Triple Crown opened for business. St. Cloud investigator Kelly Holden visited the operation and preliminarily reported that Triple Crown was operating just as it had proposed. AGED Agent Jon Anglin and Director Michele Tuchner visited Triple Crown several days after it opened and made similar observations and noted that the only way patrons could play the Triple Crown games beyond the daily entry was to make a donation. Stearns County charged Ehlen with eight counts of aiding and abetting gambling-related offenses, including maintaining a gambling establishment, conducting an illegal lottery, and possessing gambling devices.

Ehlen defended himself without counsel at a three-day trial. Holden, Anglin, Tuchner, and Ahart all testified for the state. Ehlen cross-examined the state's witnesses at length about their investigation and their understanding of Triple Crown's sweepstakes. He intimated that the state had conducted a shoddy, inadequate investigation, that investigators had rushed to judgment without understanding his business model, and that the donations did not constitute consideration.

Ehlen repeatedly asked Holden, Anglin, Tuchner, and Ahart to define the elements of the charges against him and solicited their opinions about whether Triple Crown's sweepstakes met those elements. Holden responded that the operation "looked like gambling" and compared it to something she would see at a casino. Tuchner responded that, despite not being an attorney, "in [her] interpretation, with the spinning wheels and the look [of] the device, . . . [it] could be construed [as illegal gambling]." She also responded to Ehlen's request for a specific example by explaining that she regarded the donation as consideration because one "had to pay . . . to continue to play." Anglin responded to Ehlen's questions by answering that, based on his years of experience, the Triple Crown devices were slot machines and he was "100 percent sure" that Triple Crown was engaged in illegal gambling under the elements of the statutes. Finally, Ahart responded that all statutory elements were met, that she had determined that Triple Crown's sweepstakes constituted an illegal lottery, and that the devices it used were illegal gambling devices. The jury found Ehlen guilty on all eight counts.

Ehlen appeals.

## DECISION

### I

Ehlen argues that the district court erred by allowing the state's witnesses to testify about the ultimate issue of his guilt. The state urges that we should not review these alleged errors because Ehlen invited them. A party generally cannot base his appeal on an error he invited, *State v. Carridine*, 812 N.W.2d 130, 142 (Minn. 2012), nor can he appeal based on his own trial strategy, *State v. Helenbolt*, 334 N.W.2d 400, 407 (Minn.

1983). Minnesota has long recognized the invited-error doctrine. *McAlpine v. Fid. & Cas. Co. of N.Y.*, 134 Minn. 192, 199, 158 N.W. 967, 970 (1916) ("The settled general rule is that a party cannot avail himself of invited error."). But our supreme court has said that the invited-error doctrine does not apply to plain errors. *State v. Evans*, 756 N.W.2d 854, 867 (Minn. 2008).

Although we believe we are bound by the supreme court's declaration that we should review for plain errors even if the error was invited, the state would have us observe that the "plain error exception" seems to have been swept in while the court was actually making an exception for *fundamental* errors. The supreme court announced the exception in *State v. Gisege*, 561 N.W.2d 152 (Minn. 1997). A grand jury had indicted Gisege for first-degree murder, attempted first-degree murder, and attempted second-degree murder. *Id.* at 155. The district court granted Gisege's request at the end of the trial to instruct the jury on first-degree assault, which Gisege described as a lesser-included charge to attempted first- or second-degree murder. *Id.* The jury convicted him of first-degree assault rather than attempted murder. *Id.* On appeal, Gisege argued that it was error to instruct the jury on first-degree assault because it is not a lesser-included offense and the grand jury did not indict him for that offense. *Id.* The supreme court agreed that first-degree assault was not a lesser-included offense. *Id.* at 157. It then considered that Gisege, not the state, had requested the erroneous instruction. *Id.* at 158. The *Gisege* court noted that the invited-error doctrine did not prevent it from reviewing *fundamental* errors of law, even if they were not properly preserved for appeal. *Id.* Reasoning that it was a fundamental error to convict Gisege of a crime not included in the

5

indictment, the court concluded that the invited-error doctrine did not preclude review of Gisege's argument on appeal. *Id.* at 159. The court added, in a footnote, that it rejected the state's argument that the "doctrines of plain error and fundamental [error of] law do not apply to invited error." *Id.* at 158 n.5. It did not discuss plain error in its reasoning.

The court revisited the issue in *State v. Goodloe*, 718 N.W.2d 413 (Minn. 2006). Goodloe had urged the district court not to give a cautionary instruction to the jury regarding *Spreigl* evidence, then argued on appeal that the district court erred by failing to give such an instruction. *Id.* at 424. Citing footnote 5 in *Gisege*, the supreme court stated that Goodloe had waived his objection due to invited error "unless the district court committed plain error or error of fundamental law." *Id.* It concluded that no error had occurred because the decision to decline the jury instruction was a matter of trial strategy with which the district court could not interfere. *Id.*

The supreme court has since adhered to the plain-error exception to the invited-error doctrine. *See Carridine*, 812 N.W.2d at 142; *State v. Pearson*, 775 N.W.2d 155, 166 (Minn. 2009); *Evans*, 756 N.W.2d at 867; *State v. Goelz*, 743 N.W.2d 249, 258 (Minn. 2007). It has done so without discussing the effect of any substantive distinction between plain errors and errors of fundamental law. *See, e.g.*, *Carridine*, 812 N.W.2d at 142 (discussing plain-error exception to invited-error doctrine without mentioning fundamental error).

The state here emphasizes the substantive distinction between plain error and fundamental error and urges us to limit the exception to the invited-error doctrine to

fundamental, structural errors that affect the defendant's right to a fair trial, like the error in *Gisege*. The argument has only facial appeal, and we reject it for two reasons.

First, the supreme court has certainly at least stated that challenges to plain error, like challenges to fundamental errors of law, can be reviewed on appeal even if the error was invited. And although it originally included the "plain error" reference in a case involving only fundamental errors rather than mere plain errors it has since applied the plain-error exception in cases that do not involve fundamental error. We cannot therefore say that the supreme court's statements about plain error in the invited-error context are mere dicta.

Second, the state's argument overlooks a significant relationship between plain errors and fundamental errors. Parties may challenge unobjected-to jury instructions that contain errors of fundamental law in a motion for a new trial, *State v. Gatson*, 801 N.W.2d 134, 146–47 (Minn. 2011) (citing Minn. R. Crim. P. 26.03, subd. 19(4)(f)), and may appeal any unobjected-to plain error that affects a substantial right, Minn. R. Crim. P. 31.02; *see also State v. Vance*, 734 N.W.2d 650, 655 n.3 (Minn. 2007) (stating that plain-error standard of review also applies when appealing unobjected-to errors of fundamental law), *overruled on other grounds by State v. Fleck*, 810 N.W.2d 303, 311 (Minn. 2012). The rules governing these errors differ from those governing fundamental or structural errors, because fundamental or structural errors affect the broad framework of the trial rather than specific procedural aspects of the trial. *State v. Dalbec*, 800 N.W.2d 624, 627 (Minn. 2011). But reversible plain errors are similar in weight to these errors. We will consider reversing in a plain-error analysis if we determine that an error

occurred, that the error was plain, and that the error affected the defendant's substantial rights. *State v. Ramey*, 721 N.W.2d 294, 298 (Minn. 2006). But even after we spot a plain error, we will not reverse unless the circumstances demonstrate that the integrity of the judicial process requires it. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). Because of that, one can accurately say that the only kind of plain errors that lead us to reverse are, in practical effect, fundamental. We therefore cannot accept the state's contention that invited, reversible plain errors are not subject to appellate review.

But Ehlen has not shown that the errors he identifies affect his substantial rights, and so even if admitting the testimony was error, it was not reversible plain error. The due process guaranteed by the United States and Minnesota Constitutions requires that a criminal defendant be "afforded a meaningful opportunity to present a complete defense." *State v. Richards*, 495 N.W.2d 187, 191 (Minn. 1992) (quotation omitted). Ehlen's trial strategy rested primarily on his oft-stated argument that the state rushed to judgment when it classified the donation required in Triple Crown's sweepstakes as a form of consideration. He maintained that the AGED investigators and legal counsel failed to understand (and made no effort to understand) his business model. In keeping with this trial strategy, he quizzed state witnesses on the elements of the offenses and repeatedly solicited their opinions as to whether Triple Crown was an illegal gambling operation. He continually returned to the subject, emphasizing his argument that state agents had prematurely made up their minds, were unreceptive to his reasonable explanations, and were effectively railroading him. In doing so, Ehlen elicited 22 of the 23 now-challenged statements. Whether or not his rush-to-judgment strategy was the best defense strategy, it

8

was certainly not entirely implausible or unreasonable, and it was the defense strategy Ehlen vigorously pursued even after the district court warned him that some of his questions were objectionable. Because the purportedly plain error Ehlen complains about suited his chosen defense strategy, he had a due-process right to marshal the defense on his own behalf. And we cannot say that he had a substantial right to be judicially protected from following a strategy he had a constitutional right to pursue.

These circumstances resemble those the supreme court addressed in *Goelz*. In *Goelz*, the state had introduced evidence that the defendant faked a suicide attempt, and the defendant chose to embrace that evidence and develop it further, incorporating it into his trial strategy rather than objecting. 743 N.W.2d at 258. The supreme court held that, based on the defendant's tactical decision, the plain-error exception to the invited-error doctrine did not apply because his substantial rights had not been affected. *Id.* Ehlen stands on the same ground and his argument invites the same result.

**II**

Ehlen next contends that the cumulative effect of the challenged statements deprived him of his constitutional right to a fair trial. In rare circumstances, the cumulative effect of "harmless" trial errors may prejudice the jury and lead to an unfair trial even if no single error compels a new trial. *State v. Davis*, 820 N.W.2d 525, 538 (Minn. 2012). The argument fails here, because we have already considered and found no ground to reverse based on the cumulative effect of the objectionable witness testimony that Ehlen strategically elicited. We have not held merely that the individual errors are each too slight to warrant reversal; we have held instead that the cumulative errors were

9

part of a comprehensive trial strategy that Ehlen had a right to pursue and that the district court was not bound to prevent. We hold that the cumulative effect of the objectionable statements did not deprive Ehlen of his right to a fair trial.

**Affirmed.**